Sue SPERA et al., Appellants,

v.

**FLEMING, HOVENKAMP & GRAYSON, P.C. et al., Appellees.**

No. 14–99–00137–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 3, 2000.

Larry J. Doherty, Scott Rothenberg, Houston, for appellants.

Mike O'Brien, Frank W. Gerold, Rick Lee Oldenettel, Edward J. Mahar, Houston, for appellees.

Panel consists of Justices HUDSON, FOWLER, and EDELMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellants in this case, all plaintiffs below, are Sue Spera, James Surowka, Joan Tully, William Tully, Matthew Uto, Harry White, Richard Wood, Nelson Eppert, Helen Groves, Erwin Irmscher, James Keily, Ann Keily, Joseph Langley, and Richard Shore (collectively, the "Spera Plaintiffs" or "Appellants"). Appellees, all defendants below, are individual attorneys George M. Fleming, Mark Hovenkamp, John L. Grayson, and the law firm which bears their names, Fleming, Hovenkamp & Grayson, P.C. (collectively, "FH & G" or "Appellees"). In the trial court, the Spera Plaintiffs complained that FH & G breached its fiduciary duty and otherwise committed legal malpractice by seeking excessive attorneys' fees and by failing to timely disclose a conflict of interest between the firm and its clients. In nine points of error, Appellants argue that the trial court erred in granting FH & G's motion for summary judgment. For the reasons set out below, we affirm, in part, and reverse and remand, in part.

## Background

This case stems from the tide of polybutylene pipe litigation which flooded the nation's courtrooms during the last decade. Although thousands of polybutylene cases were filed in Texas, these cases were not certified as a class action. Instead, each was prosecuted on an individual basis. For ease of administration, the judge presiding over the 334th Judicial District Court was appointed to coordinate all pretrial matters in the multitude of polybutylene cases pending in Harris County.

In individual lawsuits filed in Harris County against the manufacturers of polybutylene, FH & G represented the Spera Plaintiffs and over thirty thousand other

parties who had suffered property damage as a result of plumbing systems made from defective polybutylene pipes. In so doing, FH & G executed contingency fee agreements with each of its clients, including the Speras. Under the terms of these agreements, each polybutylene plaintiff agreed that FH & G was entitled to an award of attorneys' fees in the amount of 40% of all sums recovered by judgment or settlement and up to 45% of the sums recovered in the event of an appeal.

In December of 1995, an aggregate settlement was reached with two of the polybutylene manufacturers. The settlement called for cash payments totaling $170 million, as well as provisions for replacing the plumbing in each plaintiffs' property. Significantly, in March of 1996, after the settlement was finalized, the 334th District Court, *sua sponte*, ordered a series of "fairness hearings" to determine whether the attorneys' fees and expenses proposed by FH & G under the contingent fee contracts were reasonable. Those hearings were completed in October of 1996. During the hearings, the court heard evidence from FH & G that polybutylene litigation was its dominant activity for nine years, involving the work of eight attorneys, five legal assistants, a number of contract attorneys, investigators, law clerks, and other support personnel. FH & G presented additional evidence that, during the course of the polybutylene litigation, the law firm conducted more than 8,000 depositions and inspected over 30,000 property units. The court also heard evidence that contingency fee percentages for complex, mass tort litigation typically range from 10% to 50%, depending upon the circumstances of each case. This evidence included the fact that the lawyers representing a nationwide polybutylene class action, which the FH & G

clients had not joined, received attorneys' fees of only around 9% of the total settlement fund.

On November 18, 1996, the 334th District Court entered an order reducing the amount of allowable attorneys' fees by more than half of the amount provided for by the contingency fee contracts. Based on this order, the fees were reduced from 40% of the whole settlement value, to 20% of the cash settlement amount. Under the contingency fee contracts, FH & G would have received approximately $87 million in attorneys' fees. The amount of attorneys' fees that the court approved in place of the contractual amount was just over $33 million. The court further declined to award the $20 million in reimbursements sought by FH & G, awarding only $10 million in out-of-pocket expenses.

FH & G immediately appealed the court's order regarding the attorneys' fees, and that case was assigned to the First Court of Appeals.[1] In a December 1996 newsletter distributed to its polybutylene clients, FH & G informed the clients of its intent to appeal the 334th District Court's decision. FH & G also acknowledged, for the first time, that the attorneys' fees issue raised by the court—more than eight months earlier in March of 1996—posed a "conflict of interest" between the law firm and the clients. In July of 1997, FH & G sent additional written correspondence to its polybutylene clients offering to settle the attorneys' fee dispute. From July of 1997, through September of 1998, over 20,-000 of the polybutylene clients represented by FH & G resolved their claims over the disputed attorneys' fees. However, none of the Spera Plaintiffs entered into a settlement with FH & G over the disputed attorneys' fees. Rather, the Spera Plaintiffs complained that, by seeking to enforce

---

1. That appeal, docketed as *William and Lisa Adkins et al. v. Hoechst Celanese Corporation et al.*, No. 01–96–01528–CV, is a consolidation of sixteen appeals from lawsuits filed in eleven Texas counties. Each of those appeals turns on the correctness of the November 18, 1996 order entered by the 334th District

Court, which was adopted in other counties as part of the final judgment in those cases. We note that, on March 30, 2000, the First Court of Appeals reversed the 334th District Court's order. *See In re Polybutylene Plumbing Litigation*, 23 S.W.3d 428 (Tex.App.—Houston [1st Dist] 2000, pet. filed).

the contingent fee contracts as written, and by failing to disclose the conflict of interest between the law firm and its clients prior to December of 1996, FH & G negligently breached its fiduciary duty.

## Procedural History and Issues Presented

In February of 1998, the Spera Plaintiffs filed a lawsuit against FH & G in the 61st Judicial District Court for Harris County, Texas, alleging that, by seeking the full amount of attorneys' fees without disclosing the conflict of interest, the defendants "wholly failed and neglected to properly represent and protect" the polybutylene plaintiffs' interests.[2]  In that regard, the Spera Plaintiffs lodged claims for "fraud, misrepresentation, conflict of interest, breach of fiduciary duty, neglect, negligence, gross negligence, negligence *per se,* and legal malpractice."  The Spera Plaintiffs complained, in particular, that FH & G's "overreaching" conduct constituted an abuse of "the trust and confidence reposed in them" which rose to the level of a fiduciary breach, and so they sought forfeiture of all or part of the attorneys' fees already paid.

In September of 1998, FH & G filed a motion for summary judgment arguing that the Spera Plaintiffs' claims failed as a matter of law for the following reasons: (1) the claims were barred by the doctrine of collateral estoppel because the 334th District Court had already considered the propriety of the attorneys' fee award during the 1996 fairness hearings; (2) the claims were an "impermissible collateral attack" on the November 18, 1996 order entered by the 334th District Court because the Spera Plaintiffs did not appeal that order; (3) the claims were barred by the doctrine of judicial estoppel because of a prior statement made by the Spera

Plaintiffs during the course of the lawsuit; (4) the claims were barred because 20,000 of the proposed plaintiffs in the suit had already released their claims stemming from the attorneys' fee issue by agreeing to settle that dispute; (5) the claims regarding FH & G's efforts to settle the attorneys' fee dispute were barred as an "impermissible attack" on the 334th District Court's November 18, 1996 order; (6) that FH & G's conduct in offering to settle the attorneys' fee dispute could not support the Spera Plaintiffs' claims because the court had already found the settlement "acceptable"; (7) that, because the polybutylene plaintiffs received all of the damages sought during the litigation with the manufacturers, the Spera Plaintiffs had not been damaged and therefore could not prevail on their claims against FH & G; and (8) that, because all disputed funds were transferred into an escrow account, the Spera Plaintiffs could not prove they had been damaged by the attorneys' fee debacle.

In October of 1998, the judge of the 61st District Court entered a summary judgment in FH & G's favor without specifying the grounds for that ruling.  This appeal followed.  In their first eight points of error, Appellants challenge each of the grounds recited in FH & G's motion, arguing that none of them support a summary judgment.  Appellants' ninth point of error alleges that the judge of the 61st District Court erred generally by entering summary judgment in FH & G's favor under the rule set out in *Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119 (Tex.1970) (noting that a point of error which states generally that the trial court erred by granting summary judgment "is sufficient to preserve error and to allow argument as to

2.  Initially, Appellants sought to certify their suit against FH & G as a class action of "all persons entitled to an interest in escrowed attorneys' fees who were represented by Defendants in claims resulting from polybutylene pipe failures."  On August 31, 1999, fol-

lowing an interlocutory appeal, this Court affirmed the trial judge's order denying class certification.  *See Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 4 S.W.3d 805 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

all possible grounds upon which summary judgment should have been denied").

### Standard of Review: Summary Judgment

Here, FH & G filed its motion for summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. The standard for reviewing motions filed under this rule "is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law." *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999) (citing *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985)). Under that standard, we must take as true all evidence favorable to the nonmovant and must make all reasonable inferences in the nonmovant's favor as well. *See KPMG Peat Marwick*, 988 S.W.2d at 748; *Nixon*, 690 S.W.2d at 548–49. When a motion for summary judgment is based on the insufficiency of the nonmovant's pleadings, we likewise assume that all allegations and facts in the pleadings are true and resolve any reasonable doubt in the nonmovant's favor. *See Carreiro v. Wiley*, 976 S.W.2d 829, 831 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) (citing *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 434 (Tex.1997); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994)).

To prevail on summary judgment, a defendant, as the movant, must establish as a matter of law all the elements of an affirmative defense or show that at least one element of the plaintiff's cause of action has been established conclusively against the plaintiff. *See Robles v. Consolidated Graphics, Inc.*, 965 S.W.2d 552, 556 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984)). If a reviewing court finds that the movant has not met its burden, it must reverse and remand the case for further proceedings. *See id.* (citing *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828–29 (Tex.1970)). Where, as here, the trial court does not specify the grounds for its granting of a movant's motion for summary judgment, a reversal is warranted if the appellant shows that it was error to base its judgment on any of the grounds asserted in the motion. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

### Collateral Estoppel

In its motion for summary judgment, FH & G argued that the Spera Plaintiffs' claims were barred by the doctrine of collateral estoppel because the attorneys' fee issue was previously litigated at the fairness hearings before the 334th District Court. In their first point of error, the Spera Plaintiffs contend that the doctrine of collateral estoppel does not apply in this instance.

The doctrine of collateral estoppel is used to prevent a party from relitigating an issue that it "previously litigated and lost." *Quinney Elec., Inc. v. Kondos Entertainment, Inc.*, 988 S.W.2d 212, 213 (Tex.1999) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 519 (Tex. 1998)). To invoke collateral estoppel successfully, a party must establish the following elements: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See Mann v. Old Republic Nat'l Title Ins. Co.*, 975 S.W.2d 347, 350 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citing *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990)). The Spera

Plaintiffs insist that collateral estoppel does not apply because FH & G cannot establish any of these elements. Whether collateral estoppel applies is a question of law for the court to decide. *See Domingues v. City of San Antonio*, 985 S.W.2d 505, 507 (Tex.App.—San Antonio 1998, pet. denied) (citing *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir.)), *cert. denied*, 522 U.S. 934, 118 S.Ct. 341, 139 L.Ed.2d 265 (1997); *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 138 (Tex. App.—El Paso 1997, pet. denied).

■ A reading of the "Final Order" entered by the 334th District Court on November 18, 1996, shows that it was intended to "resolve the issue of attorney[s'] fees and expenses." The order observes that the settlement entailed $170 million in cash to be distributed among claimants representing approximately 67,000 property units and, in addition, for replacing the polybutylene plumbing found in 60,000 of those units. The order notes further that FH & G made the following proposal for distributing attorneys' fees and expenses under the existing contingent fee contracts:

> FH & G presented to the court a proposed formula wherein that law firm would receive in addition to the $20 million dollars in expenses referred to above, attorney[s'] fees in the amount of $88.8 million dollars. The attorney[s'] fee figure was arrived at by taking 40% of the cash portion of the settlement and adding it to 40% of the value of re-plumbs estimated at an agreed upon figure of $72 million dollars, or $1,200 dollars a unit for 60,000 units. Thus the total fees and expenses estimate set for by FH & G was $108.8 million dollars or 64% of the total cash fund available.

The court found that, under the "unique circumstances" present in the polybutylene "mass tort" litigation, such an award of attorneys' fees and expenses "would be excessive and contrary to the interests of justice." Accordingly, the court reduced the amount of attorneys' fees to approxi-

mately $33 million and the amount of compensation for expenses to just over $10 million.

We hold that, under these facts, the doctrine of collateral estoppel does not apply. The sole issue before the 334th District Court was whether enforcement of the 40% contingent fee agreements was reasonable as a matter of public policy. In contrast, the issue before the 61st District Court in this lawsuit by the Spera Plaintiffs is whether FH & G breached its fiduciary duty or engaged in any other wrongful conduct by failing to timely disclose a conflict of interest to the clients. Because the issues presented are separate from those addressed by the trial court during the fairness hearings, the Spera Plaintiffs' claims are not barred by collateral estoppel. *See Querner v. Rindfuss*, 966 S.W.2d 661, 668 (Tex.App.—San Antonio 1998, pet. denied) (holding that a court's previous approval of the reasonableness of attorneys' fees does not bar later litigation of claims concerning the attorneys' alleged wrongful conduct and breach of the fiduciary duty). Accordingly, the Spera Plaintiffs' first issue on appeal is sustained.

### Collateral Attack

FH & G also argued that it was entitled to a summary judgment because, by failing to appeal the 334th District Court's November 18, 1996 order apportioning attorneys' fees and expenses, the Spera Plaintiffs' claims were an "impermissible collateral attack" on the court's final order. In their second point of error, the Spera Plaintiffs contend that the trial court erred in granting summary judgment on this basis.

■ "A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose." Gus M. Hodges, *Collateral Attacks on Judgments*, 41 Tex. L. Rev. 163, 163–64 (1962). A collateral attack is impermissible if it is instituted to interpret a prior

judgment entered by the same court or another court of coordinate jurisdiction. *See, e.g., Martin v. Dosohs I, Ltd.,* 2 S.W.3d 350, 352 (Tex.App.—San Antonio 1999, pet. denied) (holding that, in Texas, a litigant may not use a declaratory judgment suit to interpret a judgment of the same or another court). In this case, the Spera Plaintiffs complain that FH & G engaged in overreaching conduct by appealing the 334th District Court's order in an effort to secure excessive attorneys' fees and that FH & G breached its duty to disclose a conflict of interest. In that respect, the Spera Plaintiffs do not seek to set aside the November 1996 order on attorneys' fees. It follows that the Spera Plaintiffs' claims are not a collateral attack on that judgment. *See, e.g., State v. Durham,* 860 S.W.2d 63, 67 (Tex.1993) (finding that, where a plaintiff is not seeking to set aside a judgment, but instead attacks conduct extrinsic to the judgment, the claim is not a collateral attack on that judgment). The Spera Plaintiffs' second point of error is therefore sustained.

## Judicial Estoppel

In its motion for summary judgment, FH & G argued that a statement purportedly made during the course of the lawsuit barred the Spera Plaintiffs' claims under the doctrine of judicial estoppel. The Spera Plaintiffs argue, in their third point of error, that the doctrine of judicial estoppel does not apply here.

■ The doctrine of judicial estoppel "bars a party, who has successfully maintained a position in a prior judicial proceeding, from later adopting an inconsistent position, unless he can show the prior statement was made inadvertently due to mistake, fraud, or duress." *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 396 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.) (citing *Owen v. Knop,* 853

S.W.2d 638, 641 (Tex.App.—Corpus Christi 1993, writ denied)). The doctrine was first adopted "based upon the public policy of upholding the sanctity of the oath, and to eliminate the prejudice that would result to the administration of justice if a litigant were allowed to swear one way one time and a different way another time." *Id.* (citing *Lesser v. Allums,* 918 S.W.2d 81, 85 (Tex.App.—Beaumont 1996, no writ); *Miles v. Plumbing Servs. of Houston, Inc.,* 668 S.W.2d 509, 512 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)); *see also Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292 (1956) (adopting the doctrine of judicial estoppel in Texas for the first time). Thus, "[t]he doctrine of judicial estoppel applies if all of the following elements are present: (1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) the party now sought to be estopped successfully maintained the prior position; (3) the prior inconsistent statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear and unequivocal." *Vinson & Elkins,* 946 S.W.2d at 396 (citing *Owen,* 853 S.W.2d at 641; *Knox,* 291 S.W.2d at 295).

■ In this case, FH & G contends that the Spera Plaintiffs' claims are barred by the doctrine of judicial estoppel because of a sentence found in their "Amended Motion for Class Certification" to the trial court in this case. That sentence states as follows: "All issues of reasonableness for attorneys' fees have been determined by orders of the 234th [sic] Judicial District Court." [3] FH & G maintains further that because the Amended Motion for Class Certification is not a part of the appellate record, the judgment must be affirmed.

We note that the statement found in the Amended Motion for Class Certification is not sworn.[4] *See Vinson & Elkins,* 946

---

3. The fairness hearings were conducted by the judge of the 334th Judicial District Court for Harris County, Texas, and not the 234th.

4. Although the Spera Plaintiffs' Amended Motion for Class Certification is not present in the instant case's appellate record, we take judicial notice of the fact that it is in the

S.W.2d at 396. Therefore, it does not satisfy all of the requisite elements of judicial estoppel. *See id.* Accordingly, the Spera Plaintiffs' third point of error is sustained.

### Release

■ In their fourth point of error, the Spera Plaintiffs contend that it was error to grant summary judgment in FH & G's favor "on the ground that 20,000 of the proposed plaintiffs in this lawsuit released all claims against the defendant-attorneys related to the disputed attorneys' fees." FH & G's motion for summary judgment argued that, because 20,000 of FH & G's polybutylene clients agreed to settle and release their claims regarding the disputed attorneys' fees, the Spera Plaintiffs had also somehow released their claims. FH & G concedes, however, that "none of the Plaintiffs/Appellants herein finalized a release and secured payment of the disputed attorneys' fees" that are currently held in escrow, and agrees that this issue would not support a summary judgment. The Spera Plaintiffs' fourth point of error is therefore sustained.

### Correspondence Sent to Plaintiffs

■ Points of error five and six address the following two pieces of correspondence—between FH & G and its polybutylene clientele—that were attached to the Spera Plaintiffs' petition: (1) a December 1996 issue of a newsletter entitled *PB Press* which was distributed by FH & G to all of its polybutylene clients to announce FH & G's plans to appeal the 334th District Court's order reducing the attorneys' fees; and (2) a letter dated July 7, 1997, in which FH & G offered to "resolve" the conflict involving the attorneys' fees set aside by the judge of the 334th District Court and to settle that matter. In their petition, the Spera Plaintiffs had com-

plained that this correspondence "memorialize[d]" FH & G's wrongful conduct. In their motion for summary judgment, FH & G argued that this correspondence could not be used to support the Spera Plaintiffs' claims because the 334th District Court had already determined that the correspondence was "acceptable." FH & G urged that the Spera Plaintiffs' claims were an "impermissible attack" on the rulings from the 334th District Court, and that they could not be "forced to relitigate" the propriety of the correspondence following such a determination.

FH & G's argument that the disputed correspondence cannot be "relitigated" or reviewed because of the 334th District Court's order is without merit. However, the Spera Plaintiffs are not using the correspondence to launch an impermissible attack on the 334th District Court. Rather, they are using the correspondence to show that they were not informed about the potential conflict of interest and given an opportunity to evaluate whether they should obtain other counsel. Because FH & G has not shown that it was entitled to summary judgment on these grounds, points five and six are sustained.

### Damages

The Speras' seventh and eighth points of error concern the issue of whether the these plaintiffs have suffered any actual damages. FH & G argued in its summary judgment motion that the Spera Plaintiffs' claims failed as a matter of law because, given that all had agreed to settle and release their claims over the disputed attorneys' fees, they suffered no damages.[5] FH & G did not argue that a breach of the fiduciary duty did not occur, nor did it argue that there was no injury to the attorney client relationship; instead, it argued simply that the Spera plaintiffs suffered no actual damages. FH & G also

---

record filed before this Court in cause number 14–98–1272–CV, addressing the interlocutory appeal of the trial court's decision to deny class certification.

5. As noted above in the discussion on point of error number four, it is undisputed that none of the Spera Plaintiffs have settled or released their claims with FH & G.

points out that the Spera Plaintiffs, each of whom participated in the 1995 settlement with polybutylene manufacturers, have "received all eligible damages" in terms of a cash payment or replumbing under the settlement agreement. FH & G argued further that it was entitled to summary judgment because all of the disputed attorneys' fees were ordered into a court-supervised escrow account pending a resolution of the FH & G's appeal of the trial court's order to the First Court of Appeals. FH & G insists, therefore, that all of the Spera Plaintiffs' claims fail because they cannot establish the essential element of damages.

■■■ On appeal, FH & G concedes that, in the context of the attorney-client relationship, proof of damages is not required with a request for fee forfeiture in a breach of fiduciary duty claim. *See Arce v. Burrow*, 958 S.W.2d 239, 251 (Tex. App.—Houston [14th Dist.] 1997), *aff'd as modified*, 997 S.W.2d 229 (Tex.1999). As noted, a fair reading of the motion for summary judgment is that FH & G alleged that it was entitled to summary judgment because the Spera Plaintiffs could not prove any actual damages as a matter of law. Although FH & G argues that its motion should be read more broadly, we find nothing in the motion which would enable us to do so.

■■■ FH & G also alleges that a recent opinion by the First Court of Appeals moots the Spera plaintiffs' claims that FH & G should have notified them sooner of a potential conflict of interest because it allegedly establishes that they had no actual damages. *See In re Polybutylene Plumbing Litigation*, 23 S.W.3d 428 (Tex.App.—Houston [1st Dist.] 2000, pet. filed). In that opinion, the appellate court held that the 334th District Court, in the absence of a class action, did not have the authority to set aside otherwise reasonable, valid contingency fee agreements

made between FH & G and the polybutylene plaintiffs. *See id.* FH & G's argument is that the Spera Plaintiffs were not harmed by FH & G's failure to disclose the 334th District Court's order because the court of appeals ultimately set that ruling aside, holding that the fees were reasonable. We disagree that the First Court of Appeals opinion moots the issue. As we have already said, a breach of fiduciary duty can occur even without actual damages. *See Burrow*, 997 S.W.2d at 240. Here, the question is whether FH & G had a duty to tell the Spera Plaintiffs about the potential conflict of interest in time for the Spera Plaintiffs to obtain other counsel to represent them at the fairness hearings the 334th District Court held. Consequently, even if FH & G's mootness argument could be interpreted as arguing that no breach occurred, we would still hold that a fact issue existed on breach of fiduciary duty.

Thus, if summary judgment was entered on this ground, it was error. *See id.* The Spera Plaintiffs' seventh and eighth points of error are therefore sustained with respect to their claim for breach of fiduciary duty.

■■■ However, damages are an essential element for all of the other claims lodged by the Spera Plaintiffs. *See, e.g., Latham v. Castillo*, 972 S.W.2d 66, 70–71 (Tex.1998) (fraudulent misrepresentation); *Praesel v. Johnson*, 967 S.W.2d 391, 394–95 (Tex.1998) (negligence, negligence per se); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex.1998) (fraud); *Federal Land Bank v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) (negligent misrepresentation); *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex.1989) (legal malpractice); *Scott v. Sebree*, 986 S.W.2d 364, 373 (Tex.App.—Austin 1999, pet. denied) (breach of contract).[6] The

6. The Spera Plaintiffs appear to claim that they need not show damages to prevail on a breach of contract action because they are also entitled to a fee forfeiture under that

theory. As support for that contention, the Spera Plaintiffs rely on the Texas Supreme Court's decision in *Royden v. Ardoin*, 160 Tex. 338, 331 S.W.2d 206 (1960), which held that

Spera Plaintiffs concede that this is true and, in an effort to demonstrate that they have suffered compensable harm, they claim that they were "damaged by the attorneys' acceptance of the undisputed portion of the attorneys' fees and expenses of litigation when such sums *may* be subject to fee forfeiture, in whole or in part, in this lawsuit." (emphasis added). In Texas, however, uncertainty as to the fact of legal damages is "fatal to recovery." *McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206, 207 (Tex.1985). We conclude that FH & G met its initial burden of establishing that the Spera Plaintiffs suffered no actual damages. The Spera Plaintiffs did not create a fact issue and, therefore, FH & G was entitled to summary judgment on the Spera Plaintiffs' remaining claims for fraud, misrepresentation, negligence, gross negligence, negligence *per se*, legal malpractice, and breach of contract. *See Deloitte & Touche v. Weller*, 976 S.W.2d 212, 215 (Tex.App.—Amarillo 1998, pet. denied), *cert. denied*, 526 U.S. 1117, 119 S.Ct. 1765, 143 L.Ed.2d 795 (1999) (noting that where actual injury is an element of a claim, a cause of action cannot be maintained unless some damages result). Therefore, the seventh and eighth points of error are overruled, in part, as to all of the Spera Plaintiffs' remaining claims.

### The *Malooly* Point

In their ninth point of error, listed as an "issue presented" in the table of contents of the Appellants' brief, the Spera Plaintiffs complain that the trial court erred by granting summary judg-

ment in the Appellees' favor under the rule set out in *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119 (Tex.1970). Under the *Malooly* rule, a point of error stating generally that the trial court erred by granting summary judgment "is sufficient to preserve error and to allow argument as to all possible grounds upon which summary judgment should have been denied." *Plexchem Int'l, Inc. v. Harris County Appraisal Dist.*, 922 S.W.2d 930, 930–31 (Tex. 1996) (per curiam) (citing *Malooly*, 461 S.W.2d at 121). As we have already addressed the specific points of error raised by the Spera Plaintiffs, there is no need to further examine whether the trial court erred generally in granting summary judgment. Moreover, the Spera Plaintiffs have not briefed this separate point of error under *Malooly* and, as a result, have presented nothing for review. *See* Tex.R.App. P. 38.1(h). Appellants' ninth point of error is therefore overruled.

### Conclusion

Based on the foregoing, the trial court's decision to grant summary judgment on the Spera Plaintiffs' claim for breach of fiduciary duty is reversed and remanded for additional proceedings. However, the trial court's decision to grant summary judgment as to the Spera Plaintiffs' remaining claims is affirmed.

---

an attorney who is disbarred or suspended prior to the completion of his contingent fee contract has abandoned his client and is therefore not entitled to collect a fee for his services. *See id.* at 209. Under that theory, an attorney who abandons a case without just cause before completing the task for which his client hired him breaches his contract of employment and forfeits all right to compensation. *See Staples v. McKnight*, 763 S.W.2d 914, 916 (Tex.App.—Dallas 1988, writ denied) (citing *Royden*, 331 S.W.2d at 209). Here,

however, the Spera Plaintiffs cannot show that FH & G failed to complete the task for which they were hired. Indeed, FH & G obtained a settlement in December of 1995; any complained of conduct by FH & G occurred after the settlement was finalized. Accordingly, *Royden* does not apply to these facts. *See Lee v. Cherry*, 812 S.W.2d 361, 363–64 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (declining to extend *Royden* where an attorney had completed the contracted for work).