Opinion issued March 3, 2005           















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00576-CV
__________
 
OSWALDO HENRIQUEZ, Appellant
 
V.
 
CEMEX MANAGEMENT, INC., Appellee
 

 
 
On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2003-06886
 

 
 
O P I N I O N
          Appellant, Oswaldo Henriquez, challenges the trial court’s rendition of
summary judgment against him on his claims for wrongful breach of employment
contract, defamation, and business disparagement brought against his former
employer, appellee, Cemex Management, Inc. (“Cemex”). In a single issue,
Henriquez contends that the trial court erred in granting Cemex’s motion for summary
judgment


 and dismissing his claims with prejudice. We affirm.
Factual and Procedural Background
          In his petition, Henriquez alleges that, in the first half of 2001, he entered into
an employment contract with Cemex to serve as Cemex’s procurement director in
Houston, Texas.


 Henriquez further alleges that his employment with Cemex was to
begin on September 1, 2001,


 that the agreed period of employment “was for a
minimum of three years,” and that he was to receive as compensation an “agreed pay
rate of $285,000 per year, with additional elements of compensation including such
items as: variable compensation, car allowance, annual lump sum bonus, paid
vacation and retirement benefits.” Henriquez testified that “a term of three years . . . 
was negotiated as the minimum that I would accept in the new position, given that
taking the job, I would have to uproot my entire family, rent or sell my house in
Venezuela, and rent or buy another one in Houston.” 
          After accepting the position with Cemex in Houston, Henriquez and his family
moved to Houston from Venezuela. According to Henriquez’s testimony, on the
morning of December 2, 2002, Andy Miller, vice president of human resources of
Cemex, and Alfonso Caballero, corporate vice president of procurement for Cemex,
came to Henriquez’s office and terminated his employment. Henriquez testified that
he was fired because representatives of Cemex believed that he had stolen money
from Cemex by taking money under the table from two of Cemex’s vendors, Roland
Sped Caribe (“Roland Sped”) and IFS, Inc. (“IFS”). 
           Henriquez filed suit on February 7, 2003. On November 10, 2003, Henriquez
filed his third amended original petition, asserting claims for wrongful breach of
employment contract, defamation, and business disparagement.


 On March 3, 2004,
Cemex filed its summary judgment motion, seeking dismissal of Henriquez’s claims. 
Cemex asserted that Henriquez’s breach of contract claim was precluded because
Henriquez did not have an employment contract with Cemex that satisfied the statute
of frauds. Cemex further asserted that Henriquez defamation claim was precluded
because the alleged defamatory statements were either not capable of a defamatory
meaning or were subject to the qualified privilege of an employer to investigate
employee wrongdoing. Finally, Cemex asserted that Henriquez’s business
disparagement claim was precluded because the alleged disparaging statements did
not concern Henriquez’s economic interests and because Henriquez had not suffered
any special damages as a result of the disparaging statements. 
          Henriquez filed a response to Cemex’s summary judgment motion, contending
that certain written documents satisfied the statute of frauds. Henriquez also
contended that Cemex had made defamatory statements that were not covered by a
qualified privilege or that any applicable qualified privilege was destroyed because
Cemex had made such statements with actual malice. Henriquez did not specifically
address Cemex’s arguments concerning his business disparagement claim. Cemex
filed a reply in support of its motion and also filed objections to the affidavit
testimony of Henriquez. The trial court held a hearing and granted Cemex’s
summary judgment motion and dismissed each of Henriquez’s claims against Cemex
with prejudice.


 
          In regard to his breach of contract claim, Henriquez concedes that there is no
specific document titled “Employment Agreement” or “Employment Contract”
between Cemex and Henriquez. Rather, Henriquez asserts that there “was an entire
set of documents, of an official nature, submitted by [Cemex] to the United States
Department of Justice, Immigration Section, detailing in full, in writing, the terms of
the employment offered and accepted by the parties.” Henriquez further alleges that
the terms contained in the documentation submitted to the INS were later ratified in
letters provided to him by Cemex. 
          Specifically, Henriquez relies on the following documents to support his claim
for wrongful breach of employment contract: (1) a July 17, 2001 letter submitted by
Gilberto Perez of Cemex to the Immigration and Naturalization Service (“INS”) as
part of Henriquez’s L-1A visa application, stating that Cemex “would like Mr.
Henriquez to work in L-1A status as a director of procurement for a period of three
years,” that Cemex “would like to employ Mr. Henriquez for the next three years,”
and that Cemex had offered Henriquez an annual salary of $100,000; (2) a July 25,
2001 letter submitted by Cemex’s lawyer to the INS in conjunction with Mr.
Henriquez’s visa application, which states that Cemex “would like Mr. Henriquez to
work in L-1A status as a Director of Procurement for a period of three years”; (3) a
L-1A visa application form signed and submitted in July 2001 by Gilberto Perez of
Cemex and Cemex’s lawyer stating that the dates of Henriquez’s “intended
employment” were August 1, 2001 through August 1, 2004 and that Henriquez’s
salary would be $100,000 per year; (4) a February 26, 2002 letter from Thomas
Robinson (“Robinson”), manager of compensation for Cemex, addressed to “To
Whom it May Concern,” stating that Henriquez was employed with Cemex, that
Henriquez’s annual gross salary was $137,753.03, that Henriquez’s “assignment is
expected to last approximately three years or longer,” and that Henriquez was entitled
to receive additional compensation through various bonuses; (5) a May 7, 2002 letter
from Robinson addressed to “To Whom it May Concern,” stating that Henriquez was
employed with Cemex, that Henriquez’s annual gross salary was $143,346.03, that
Henriquez’s “assignment is expected to last approximately three years or longer,” and
that Henriquez was entitled to receive additional benefits and compensation in the
form of variable compensation, a car allowance, and an annual bonus; and (6) a
provision in Cemex’s International Mobility Policy for Executives titled “Lump-sum
Bonus,” which generally provided that bonuses were to be paid according to the
length of time the executive stayed in the United States. In addition to this
documentation, Henriquez also asserts that Gilberto Perez told him he would be
employed at Cemex for three or more years.
          In regard to his defamation and business disparagement claims, Henriquez
asserts that Cemex, acting through its authorized officers, agents and employees,
disseminated and wrongfully published certain incorrect facts about him to Roland
Sped and its owner, Alfredo Tauszky, and to IFS and its owner, Ramon Montesano. 
Henriquez further asserts that Cemex made defamatory statements about him in
Houston and abroad, and that such statements “were false and were made with actual
knowledge that they were probably false or, alternatively, with a significant level of
negligence as to the accuracy of the contents of the representations made.” Henriquez
alleges that these statements accuse him of unlawful acts, including the receipt or
attempted receipt of unmerited and unapproved commissions in excess of one million
dollars. 
          In his deposition testimony, Henriquez specifically identified the following
seven instances in which Cemex allegedly defamed him: (1) a September 2002
meeting between Tauszky of Roland Sped and Francisco Perez, Jaime Elizondo, and
Eduardo Horowitz of Cemex Venezuela and Alfonso Caballero of Cemex Mexico
during which these Cemex representatives told Tauszky that Henriquez had taken
money from Cemex and that they believed Henriquez had also used his influence in
helping Tauszky obtain business for Roland Sped; (2) a meeting in or about
September 2002 between Francisco Perez of Cemex Venezuela and Ramon
Montesano of IFS during which Montesano was told that Cemex had “found quite a
few irregular things and that they needed him to cooperate” and that someone at
Cemex was being investigated in regard to the relationship between Cemex and IFS
and Roland Sped; (3) a meeting or meetings called by Francisco Perez of Cemex
Venezuela in which he told Cemex Venezuela employees that Henriquez had been
fired because he had “irregular business with suppliers and vendors”; (4) a meeting
between P.R. Talluri and Maria Christina Gonzalez, both former Cemex employees
at the time the meeting occurred, during which Talluri told Gonzalez that he had
heard that Henriquez had been fired from Cemex because he took money from
vendors; (5) a conversation between Cezar Cruz and Tony Espinosa, both of Cemex,
in which Cruz told Espinosa that Henriquez was going to be fired; (6) a statement
made by Espinosa to Alex Calbrella and Marco Jerez, both of whom were Cemex
employees traveling with Espinosa shortly before Henriquez was fired, that they
should not talk to Henriquez because he was going to be fired; and (7) a statement
by Francisco Salinas of Cemex to Ricardo Lobo of Cemex that “bad things” were
being said about Henriquez. 
Standard of Review
          A party moving for summary judgment has the burden of proving that there is
no genuine issue of material fact and that the movant is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166(c); Nixon v. Mr. Prop. Mgmt., 690 S.W.2d 546,
548 (Tex. 1985); Farah v. Mafrige & Kormanik, 927 S.W.2d 663, 670 (Tex.
App.—Houston [1st Dist.] 1996, no writ). When deciding whether there is a
disputed, material fact issue precluding summary judgment, evidence favorable to the
non-movant will be taken as true. Nixon, 690 S.W.2d at 548-49. Every reasonable
inference must be indulged in favor of the non-movant and any doubts resolved in its
favor. Id. at 549. When a defendant moves for summary judgment, it must either (1)
disprove at least one element of the plaintiff’s cause of action or (2) plead and
conclusively establish each essential element of its affirmative defense, thereby
defeating the plaintiff’s cause of action. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995); Farah, 927 S.W.2d at 670.
          Here, the summary judgment order did not specify the grounds upon which the
trial court relied. On appeal, Henriquez, as the non-movant, is required to show that
each summary judgment ground alleged was insufficient to support summary
judgment. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).
Accordingly, we will affirm the trial court’s summary judgment order if any of the
grounds presented in the supporting motion was meritorious. Harwell v. State Farm
Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995); Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989).
 
Wrongful Breach of Employment Contract 
          “Texas follows the doctrine of employment at will, under which employment
for an indefinite term may be terminated at will and without cause.” Schroeder v. Tex.
Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991). Absent a specific contractual
term to the contrary, this doctrine permits an employer to fire an employee without
liability. Id.; Massey v. Houston Baptist Univ., 902 S.W.2d 81, 83 (Tex.
App.—Houston [1st Dist.] 1995, writ denied).


 Cemex argues that the trial court
properly granted its motion for summary judgment on Henriquez’s breach of contract
claim because Henriquez did not have a valid employment contract with Cemex that
satisfied the statute of frauds. 
          The statute of frauds provides, in pertinent part:
(a)     A promise or agreement described in Subsection (b) of this
section is not enforceable unless the promise or agreement, or a
memorandum of it, is

(1)     in writing; and
(2)     signed by the person to be charged with the promise or
agreement or by someone lawfully authorized to sign for
him.

(b)     Subsection (a) of this section applies to:
 
. . .
 
(6) an agreement which is not to be performed within one year
from the date of making the agreement.

Tex. Bus. & Com. Code Ann. § 26.01 (Vernon 2002). Because Henriquez contends
that he entered into an employment contract with Cemex for a minimum term of three
years, his employment agreement was not capable of being performed within one year
from the date of making the agreement, and thus falls within the statute of frauds. Id.;
Schroeder, 813 S.W.2d at 489; Cruikshank v. Consumer Direct Mortgage, Inc., 138
S.W.3d 497, 501 (Tex. App.—Houston [14th Dist.] 2004, pet. filed). Thus, in order
to succeed on his claim for wrongful breach of employment contract, Henriquez must
show that he had an employment contract with Cemex that specifically provided that
Cemex did not have the right to terminate his employment at will and (2) Cemex’s
promise or agreement to employ Henriquez, or a memorandum of it, was in writing
and signed by Cemex. Tex. Bus. & Com. Code Ann. § 26.01 (Vernon 2002);
Cruikshank, 138 S.W.3d at 501. Furthermore, he must show that a writing was
complete within itself in every material detail and contained all essential elements so
that the contract could be ascertained without resort to oral testimony. Cohen v.
McCutchin, 565 S.W.2d 230, 232 (Tex. 1978); Collin v. Allied Pharmacy Mgmt, Inc.,
871 S.W.2d 929, 933 (Tex. App.—Houston [14th Dist.] 1994, no writ). However, the
writing requirement under the statute of frauds may be satisfied by two or more
documents. Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995). Additionally,“a
valid memoranda of the contract may consist of letters and telegrams signed by the
party to be charged and addressed to his agent or the other party to the contract, or
even to a third party not connected with the transaction.” Adams v. Abbott, 254
S.W.2d 78, 80 (Tex. 1952); see also Key v. Pierce, 8 S.W.3d 704, 708 (Tex.
App.—Fort Worth 1999, pet. denied); EP Operating Co. v. MJC Energy Co., 883
S.W.2d 263, 267 (Tex. App.—Corpus Christi 1994, writ denied). 
          The documents on which Henriquez relies in his attempt to satisfy the statute
of frauds can be divided into two categories. The first category of documents relates
to the submission of Henriquez’s visa application to the INS (the “INS documents”).


 
Henriquez contends that these documents detailed in full the terms of his employment
contract with Cemex. However, these documents were deficient in several respects. 
First, these documents did not contain language sufficient to create an employment
relationship between Henriquez and Cemex for a definite term of three years. The
letters submitted to the INS merely stated that Cemex “would like Mr. Henriquez to
work . . . for a period of three years” and that Cemex “would like to employ Mr.
Henriquez for the next three years.” The letters to the INS did not state that
Henriquez “will” be employed for a period of three years upon approval of his visa
application. The visa application form merely stated the dates of Henriquez’s
“intended employment.” Second, the INS documents did not supply a consistent and
accurate term of employment, and thus do not support Henriquez’s claim that Cemex
was required to employ him for a three-year period beginning September 1, 2001, the
date identified in his petition, or February 1, 2002, the date identified in his
deposition testimony. Third, the INS documents did not accurately reflect the salary
term, which Henriquez maintains he specifically negotiated prior to entering into the
employment contract with Cemex. In the July 17, 2001 letter, Cemex stated that
Henriquez’s salary was $100,000 per year. The other INS documents did not contain
any information on Henriquez’s salary or the other material terms of his employment.
          In his deposition testimony, Henriquez conceded that he did not negotiate any
terms contained in the INS documents and that many of the terms contained in the
INS documents were not the terms on which he was suing. As stated in his petition,
Henriquez’s claim for breach of employment contract was based on the contention
that he entered into an employment contract with Cemex for a period of three years
beginning on September 1, 2001 at an annual salary of $285,000 plus additional
compensation. The INS documents did not support this contention. The INS
documents were not complete within themselves and did not contain every material
detail and essential element of Henriquez’s alleged employment contract with Cemex
and thus, as a matter of law, did not satisfy the statute of frauds.



          The second group of documents on which Henriquez relies consists of two
letters dated February 16, 2002 and May 7, 2002 from Cemex and addressed to “To
Whom it May Concern.” Henriquez concedes that both of these letters, which are
dated after the date on which Henriquez began employment with Cemex, were
provided to him by Robinson, Cemex’s compensation manager, for the benefit of his
creditors. However, Henriquez states that he also requested the first letter in order
to determine his “benefits and payments.” Henriquez contends that these letters
ratified the terms of employment stated in the INS documents, and that these letters
confirm Henriquez’s salary, bonus, car allowance, and, “most clearly, the
expectations of the parties as to the terms of the employment contract.” However,
like the INS documents, these letters were deficient in several respects. They merely
stated that Henriquez’s employment was “expected to last approximately three years.” 
More importantly, these letters stated inconsistent salary terms that were materially
different from the salary that Henriquez contends he specifically negotiated, even
though the letters were provided after Henriquez began his employment and after
Henriquez testified that he was receiving the negotiated salary.


 Because 
Henriquez’s salary was a material term to his employment contract with Cemex and
because these letters did not contain this and other material terms, these letters did not
satisfy the statute of frauds. See Conner v. Lavaca Hosp. Dist., 267 F.3d 426, 433
(5th Cir. 2001) (stating, “Generally, duration, compensation, and the employee’s
duties are essential elements of an employment contract”); Farrar v. Colo. Indep. Sch.
Dist., 444 S.W.2d 204, 206-07 (Tex. Civ. App.—Eastland 1969, writ ref’d n.r.e.)
(finding that writing did not satisfy statute of frauds because it did not “set out in
detail the full provisions and terms of a contract of employment including such
matters as the amount of . . . compensation, the duties to be performed, the working
hours and conditions and numerous other matters common to employment
contracts”).
          Finally, Henriquez points us to a provision in Cemex’s International Mobility
Policy for Executives that provided for a reduction of lump sum bonuses for
executives based on the length of time that the executive remained in the United
States. Generally, employee handbooks and policy manuals do not create implied
contracts that modify the at-will-employment relationship. See, e.g., Vallone v. Agip
Petroleum Co., Inc., 705 S.W.2d 757, 759 (Tex. App.—Houston [1st Dist.] 1986,
writ ref’d n.r.e.). Here, the provision of the policy cited by Henriquez did not contain
the material details and the essential elements of his employment agreement with
Cemex, and thus the policy did not provide a writing that satisfied the statute of
frauds.
          We note that Henriquez did testify that he was orally promised a three-year
employment period with Cemex at a certain salary and that he specifically negotiated
this term before he and his family agreed to move to the United States. However, this
court cannot resort to oral testimony to cure the deficiencies in the writings. Baker
v. Lockheed Aircraft Serv. Co., 584 S.W.2d 369, 372 (Tex. Civ. App.—San Antonio
1979, writ ref’d n.r.e.).
          While Henriquez correctly notes that the writing requirement under the statute
of frauds may be satisfied by two or more documents, even when the INS documents,
the “To Whom it May Concern” letters, and the provision in the employee policy are
taken together, it is impossible to determine the material details and essential
elements of Henriquez’s employment agreement with Cemex, including but not
limited to Henriquez’s specific term of employment and Henriquez’s salary. If we
accepted Henriquez’s argument, this court would be required first to treat the writings
on which he relies as sufficient to satisfy the statute of frauds and then to disregard
the contents of those writings and to enforce an oral agreement differing in material
and essential respects from the cited documents. Because it would be necessary to
resort to oral testimony to complete the material terms of the contract, we hold that
the documents cited by Henriquez did not, as a matter of law, satisfy the statue of
frauds. Furthermore, because the summary judgment evidence reveals that Henriquez
did not have a valid employment contract with Cemex that satisfied the statute of
frauds, we hold that the trial court did not err in granting summary judgment on his
claim for wrongful breach of employment contract. Cohen, 565 S.W.2d at 232;
Dobson v. Metro Label Corp., 786 S.W.2d 63, 66 (Tex. App.—Dallas 1990, no writ);
Baker, 584 S.W.2d at 372. 
Defamation
          In order to prevail on his defamation claim, Henriquez must, at a minimum,
establish that (1) Cemex published a statement of facts, (2) the statement referred to
Henriquez, (3) the statement was defamatory, and (4) Cemex acted with negligence
regarding the truth of the published statements. WFAA-TV v. McLemore, 978 S.W.2d
568, 571 (Tex. 1998); Cruikshank, 138 S.W.3d at 502. Cemex contends that the trial
court properly granted its motion for summary judgment on Henriquez’s defamation
claim because the alleged defamatory statements made by Cemex were either not
capable of a defamatory meaning or were subject to the qualified privilege of an
employer investigating employee wrongdoing, and thus Henriquez’s defamation
claim fails as a matter of law.
          Whether a statement is reasonably capable of defamatory meaning is a question
of law to be determined by the court. Turner v. KTRK Television, Inc., 38 S.W.3d
103, 114 (Tex. 2000); Musser v. Smith Protective Serv., Inc., 723 S.W.2d 653, 654-55 (Tex.1987); Einhorn v. LaChance, 823 S.W.2d 405, 410 (Tex. App—Houston 
[1st Dist.] 1992, writ dism’d w.o.j.). For a statement to be actionable as
defamatory, the plaintiff must establish that the statement referred to the
plaintiff. Newspapers, Inc. v. Matthews, 339 S.W.2d 890, 893 (Tex. 1960); Delta
Air Lines, Inc. v. Norris, 949 S.W.2d 422, 427 (Tex. App.—Waco 1997, writ
denied). A plaintiff is referred to in a defamatory statement if he is named in the
statement or if those who know the plaintiff would understand that the statement
was referring to the plaintiff. Matthews, 339 S.W.2d at 893; American
Broadcasting Cos. v. Gill, 6 S.W.3d 19, 34 (Tex. App.—San Antonio 1999, pet.
denied). A statement is defamatory if the words tend to injure a person’s
reputation, exposing the person to public hatred, contempt, ridicule, or financial
injury. Austin v. Inet Technologies, Inc., 118 S.W.3d 491, 496 (Tex. App.—Dallas
2003, no pet.); Einhorn, 823 S.W.2d at 410-11.
          In determining if a statement is defamatory, we must construe the
statements as a whole, in light of surrounding circumstances and based upon
how a person of ordinary intelligence would perceive the entire statement. Carr
v. Brasher, 776 S.W.2d 567, 570 (Tex. 1989); Delta Air Lines, 949 S.W.2d at 426;
Einhorn, 823 S.W.2d at 411. Because the issue of defamatory meaning is a
question of law, a jury should be permitted to determine a statement’s meaning
and the statement’s effect on the ordinary person only when the court
determines the language to be “ambiguous or of doubtful import.” Einhorn, 823
S.W.2d at 411. 
          Here, the statement made to Ramon Montesano of IFS—that “someone”
at Cemex was being investigated with regard to their relationships with IFS and
Roland Sped—did not sufficiently identify Henriquez to be capable of
defamatory meaning.


 Similarly, Francisco Salinas’s alleged statement that
“bad things” were being said about Henriquez and Cruz’s alleged statement to
Espinosa and Espinosa’s subsequent statements to Calbrella and Jerez that
Henriquez was going to be fired were not sufficiently specific to be defamatory. 
Id. (finding statement that employee was fired for reasons relating “solely to
work performance” was nonspecific and was not capable of defamatory
meaning). According to Henriquez’s own testimony, these statements did not
contain specific reasons as to why Henriquez was being fired. Thus, they cannot
be considered defamatory as a matter of law. Id.
          Cemex contends that the other alleged defamatory statements were subject
to the defense of qualified privilege. “An employer has a conditional or qualified
privilege that attaches to communications made in the course of an investigation
following a report of employee wrongdoing.” Randall’s Food Mkts., Inc. v.
Johnson, 891 S.W.2d 640, 646 (Tex. 1995). “This privilege remains intact as long
as communications pass only to persons having an interest or duty in the matter
to which the communications relate.” Id. A court determines, as a matter of
law, whether a privilege exists. Calhoun v. Chase Manhattan Bank (U.S.A.) N.A.,
911 S.W.2d 403, 408 (Tex. App.—Houston [1st Dist.] 1995, no writ). 
Communications that pass beyond those with an interest or duty in the subject
matter are not privileged. Randall's Food Mkts., Inc., 891 S.W.2d at 646. 
However, communications between company principals and employees,
including communications concerning the termination of an employee, have been
held to be protected by this privilege. Id.; Austin, 118 S.W.3d at 497; Welch v.
Doss Aviation, Inc., 978 S.W.2d 215, 224 (Tex. App.—Amarillo 1998, no writ);
Stephens v. Delhi Gas Pipeline Corp., 924 S.W.2d 765, 770 (Tex.
App.—Texarkana 1996, writ denied); Bergman v. Oshman’s Sporting Goods,
Inc., 594 S.W.2d 814, 816 (Tex. Civ. App.—Tyler 1980, no writ); Borden, Inc. v.
Wallace, 570 S.W.2d 445, 448 (Tex. Civ. App.—El Paso 1978, writ dism’d w.o.j.),
disapproved on other grounds, Ayers v. Canales, 790 S.W.2d 554, 556 n.2 (Tex.
1990).
          Proof that a statement was motivated by actual malice, existing at the time
of publication defeats the privilege. Randall’s Food Mkts., Inc., 891 S.W.2d at 646. 
“In the defamation context, a statement is made with actual malice when it is
made with knowledge of its falsity or with reckless disregard as to its truth.” Id. 
“Reckless disregard is a high degree of awareness that the statement is probably
false.” Carr, 776 S.W.2d at 571. To invoke the privilege on a summary
judgment, Cemex must conclusively establish that the allegedly defamatory
statements were made with an absence of malice. Id.
          The statements made to Tauszky and Montesano during their respective
September 2002 meetings with Francisco Perez of Cemex were made in the
course and scope of Cemex’s investigation into the allegations that Henriquez,
Roland Sped, and IFS were engaging in wrongful conduct. Because these parties
were part of the group being investigated, they had an interest in the subject
matter of these communications and a qualified privilege attached to these
statements. Randalls Food Mkts., Inc., 891 S.W.2d at 646. Henriquez agreed in
his deposition testimony that all persons present at the meetings between Perez,
Tauszky, and Montesano had a right to participate in the investigation of the
allegations of wrongful conduct. Perez’s statements to other Cemex Venezuela
employees about Henriquez’s termination were also protected by the privilege. 
See Welch, 978 S.W.2d at 224 (concluding that circulation of memo to pilots
explaining why another pilot instructor had been fired was within the scope of
the employer’s qualified privilege). The summary judgment evidence indicated
that those who may have been informed of the reasoning behind Henriquez’s
termination had an interest or duty in the subject matter of the information. 
Finally, the statement allegedly made by P.R. Talluri


 to Maria Christina
Gonzalez cannot give rise to a claim for defamation against Cemex because
neither Talluri nor Gonzales were employed by Cemex at the time this
conversation took place.
          However, the qualified privilege did not apply if the statements at issue
were made with actual malice. In the context of a summary judgment, if the
defendant accused of defamation offers evidence that is “clear, positive and
direct,” even if such evidence is from an interested witness, establishing the lack
of actual malice, the plaintiff must offer controverting proof to establish a fact
issue as to malice. Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989); Stephens,
924 S.W.2d at 771. 
          Francisco Perez, who became regional procurement director for Cemex
Venezuela in August 2001 and assumed many of the job responsibilities
previously handled by Henriquez, testified in his affidavit that upon assuming
his position as regional procurement director, he noticed that charges being
submitted by IFS and Roland Sped to Cemex were higher than he thought they
should have been. Perez also testified that around this time he was notified by
a Cemex employee, Heiddy Corredor, of inappropriate business dealings
between Cemex Venezuela, Roland Sped, and IFS. IFS and Roland Sped had
provided all of Cemex’s procurement functions from the United States while
Henriquez had been procurement director for Cemex Venezuela. Consequently,
Perez believed it was necessary to investigate the relationship between
Henriquez and IFS and Roland Sped. During this investigation, Perez met with
Tauszky and Montesano, and after these meetings, Perez believed further
investigations were necessary. Perez then hired KPMG to conduct a full audit
of the transactions between Cemex and IFS and Roland Sped. Based on Perez’s
investigation and the audit, Perez testified that, at the time Henriquez’s
employment was terminated, he believed that Henriquez had been involved in
a scheme to overcharge Cemex. 
          In an effort to establish actual malice, Henriquez cites two of his own
affidavits.


 These affidavits, however, did not address the issue of actual malice
because they did nothing to counter Cemex’s evidence that Perez conducted an
investigation based on his own personal review of the documentation and on
allegations presented to him by another Cemex employee. Specifically, nothing
in his affidavits addressed whether Cemex had a basis to conduct the
investigation or whether anyone at Cemex made the allegedly defamatory
statements with actual malice.


 Cemex’s summary judgment evidence
established that Perez believed that the statements he made were factually
correct and that he did not act with reckless disregard as to their truth or falsity
in publishing those statements. Henriquez did not present any controverting
summary judgment evidence. Accordingly, we hold that the trial court did not
err in rendering summary judgment on Henriquez’s defamation claim.



Business Disparagement
          In his petition, Henriquez alleges that Cemex “made disparaging words
about [Henriquez’s] business behavior and economic interests which were
factually false.” Cemex contends that the trial court properly rendered
summary judgment on Henriquez’s business disparagement claim because the
summary judgment evidence established that no disparaging words were
published regarding Henriquez’s economic interests, and Henriquez has
admitted that he has not suffered any damage to his economic interests.
          Henriquez’s single issue presented states “Did the District Court commit
reversible error by granting summary judgment with inherent material fact
issues present after a jury demand had been timely made.” Henriquez cites
Malooly Bros., Inc. v. Napier, 461 S.W.2d 119 (Tex.1970), for the rule that “a point
of error stating generally the trial court erred in granting summary judgment
is sufficient to preserve error and to allow argument as to all possible grounds
upon which summary judgment should have been denied.” Cruikshank, 138
S.W.3d at 502 (internal citations omitted). Although Henriquez has presented
a general Malooly point of error, such a point is sufficient to preserve a
complaint only if the specific ground challenged on appeal is supported by
argument. See Tex. R. App. P. 38.1(h); Spera v. Fleming, Hovenkamp & Grayson,
P.C., 25 S.W.3d 863, 874 (Tex. App.—Houston [14th Dist.] 2000, no pet.). 
Henriquez did not present any argument or authorities on his cause of action for
business disparagement in either his brief or his response to Cemex’s summary
judgment motion. Therefore, because Henriquez has not raised any proper
complaint regarding the trial court’s rendition of summary judgment on his
business disparagement claim, we hold that he has waived any error for our
review. Id. 
 
 
 
          Conclusion
          We overrule Henriquez’s sole issue and affirm the judgment of the trial
court.
 


                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Alcala.