Reversed and Remanded and Majority and Concurring and Dissenting
Opinions filed November 27, 2002









Reversed and Remanded and Majority and Concurring and
Dissenting Opinions filed November 27, 2002.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-00-01459-CV

____________

 

GEORGE
DEUTSCH, Appellant

 

V.

 

HOOVER
, BAX & SLOVACEK, L.L.P., Appellee

 



 

On
Appeal from the 165th District Court

Harris
County, Texas

Trial
Court Cause No. 97-43511

 



 

M A J O R I T Y   O P I N I O N








The
dispute in this case arose out of the attorney-client relationship between appellee Hoover, Bax & Slovacek, L.L.P. and its former client, appellant George
Deutsch.  The client challenges the trial
court=s judgment awarding attorney=s fees to the law firm based on
unpaid legal bills and ordering that he take nothing on his counterclaims
against the law firm and the individual attorney who handled his file.  We conclude the trial court erred in granting
a directed verdict against the client as to his claim for fee forfeiture based
on alleged breaches of fiduciary duty relating to the law firm=s conflicts of interest.  Accordingly, we reverse and remand this case
to the trial court for a jury trial on the disputed fact issues regarding this
claim and for further proceedings consistent with this opinion.  

                              I.  Factual and Procedural Background

Deutsch, a New York real estate
investor, had an interest in several partnerships owning property in the
Houston area, including Dan-333 Associates (ADan-333@) and 
Kirkwood Atrium Associates. 
Several of Deutsch=s partners filed for bankruptcy in Delaware in 1993, and
Deutsch represented himself for over a year in those proceedings.  In 1994, in an effort to buy a Houston
building being sold by one of the partnerships, Deutsch retained the law firm of Hoover, Bax & Slovacek, L.L.P. (the ALaw Firm@) to
help him Aget the attention@ of the bankruptcy trustee.  At Deutsch=s request, the Law Firm sought an
injunction in state district court in Houston to prevent the sale of the
building.  As part of that injunction
proceeding, Deutsch, represented by the Law Firm, claimed the bankruptcy
trustee had no authority to sell the building because the bankruptcy estate
included only partnership interests rather than the building itself.  The bankruptcy trustee responded with an
adversary proceeding against Deutsch and the Law Firm in the  Delaware bankruptcy case.  All issues in Delaware were tried in 1994,
but the bankruptcy court did not issue a final order until January 1998.  In that final order, the bankruptcy court
assessed $75,000 against Deutsch for embezzlement, awarded him $300,000 in
commissions, confirmed some of his partnership interests, and absolved him of
any personal liability on a purported breach of promise to purchase the Houston
building. 

Meanwhile, in August 1997, the Law Firm sued Deutsch
for unpaid legal bills of more than $67,000. 
In November 1998, Deutsch filed a counterclaim against the Law Firm, and
in the same proceeding, also asserted claims against David Waddell, the Law
Firm attorney who had handled his file. 
Deutsch alleged negligence, breach of contract, breach of fiduciary
duty, negligent misrepresentation, violations of the Deceptive Trade Practices
Act (ADTPA@), and fraud.








After the close
of all the evidence at trial, the Law Firm moved for a directed verdict on
various grounds, including statute of limitations.  Because the Law Firm had not asserted
limitations as an affirmative defense in its pleadings, the Law Firm also
sought leave to amend its answer to assert the statute-of-limitations
defense.  The trial court granted the Law
Firm=s
motion for leave and also granted its motion for directed verdict.[1]  The trial court indicated that the statute of
limitations barred all of Deutsch=s claims except for his negligence claim.[2]  The trial court then submitted the case to the jury in two
broad-form questions, asking:  (1) What
fees (if any) Deutsch owed the law firm? and (2) Whose negligence (if any)
proximately caused injury to Deutsch? 
The jury found Deutsch=s own negligence caused his injuries, and awarded the Law
Firm $61,055.95 for unpaid bills, plus attorney=s fees incurred in bringing the
collection suit.  Deutsch appeals from
this judgment as to the Law Firm only.

                                            II.  Issues Presented

Challenging the judgment in favor of the Law Firm, Deutsch
raises the following issues:

!         Did the trial court err in granting the
Law Firm leave to file a supplemental answer asserting a statute-of-limitations
defense? (second issue)








!         Did the trial court err in granting the
Law Firm=s motion for
directed verdict as to Deutsch=s
breach-of-fiduciary-duty claim, including Deutsch=s
claim for fee forfeiture? (first and seventh issues)

!         Did the trial court err in refusing
Deutsch=s requested
jury questions regarding the alleged defenses of misrepresentation, legal
excuse for breach of contract, and 
breach of fiduciary duty? (third, fourth, and fifth issues)

!         Did the trial court err in granting the
Law Firm=s motion for
directed verdict as to Deutsch=s
claim for exemplary damages? (sixth issue)

!         Did the trial court err in granting the
Law Firm=s motion for
directed verdict as to Deutsch=s
claims for breach of contract and attorney=s
fees? (eighth, ninth, and tenth issues)

 

                                                   III.  Analysis

A.      Did Deutsch waive his right to a new trial
and did the trial court err by allowing the Law Firm to plead limitations
during trial?

 

As an initial
matter, the Law Firm argues that all of Deutsch=s omitted jury issues are barred by a limitations ruling to
which he has waived any appeal.  After
all parties rested at the end of four days of evidence, the Law Firm moved for
directed verdict on various grounds, one of which was limitations.  When Deutsch objected that the Law Firm had
not pleaded limitations, the trial court granted the Law Firm leave to amend,
and granted Deutsch=s ensuing motion to amend to plead the discovery rule.  On its own motion, the trial court also
offered to declare a mistrial; Deutsch declined this offer because of the
expense involved in retrying the case.








On
appeal, the Law Firm argues Deutsch=s refusal to accept a mistrial constitutes waiver C
that he cannot take a peek at the verdict and then ask for the new trial that
he earlier refused.  Neither party has
identified any case directly on point. 
Texas Rule of Civil Procedure 66, governing trial amendments, suggests a
postponement may cure any prejudice from a trial amendment.  See Tex.
R. Civ. P. 66 (stating court may grant a postponement to enable the
objecting party to meet trial amendment). 
But there is nothing in the rule to suggest an offer of a mistrial does
so, especially when the trial is virtually completed.  A party seeking leave to amend its pleadings
after the trial has commenced should not be rewarded by forcing the judge,
jury, and opposing party to either acquiesce in the tardy amendment or start
over.  In this case, the mistrial was the
trial court=s suggestion; the Law Firm never agreed to it, and certainly
never offered to pay Deutsch=s expenses to try the case a second time.  Deutsch=s decision to refuse the trial court=s
offer of a mistrial did not amount to a relinquishment of his objection.  Accordingly, we hold Deutsch did not waive
his complaint concerning the trial amendment. 

In addressing the merits of Deutsch=s complaint that the trial court
erred in granting the Law Firm leave to file a trial amendment, we begin by
making two critical observations: (1) this issue involved questions of surprise
and prejudice, and (2) Deutsch objected. 
Under these circumstances, we review the trial court=s ruling for an abuse of
discretion.  See Tex. R. Civ. P. 63, 66; Hardin v.
Hardin, 597 S.W.2d 347, 350B51 (Tex. 1980).  In making this determination, we focus on the nature of the
amendment and the prejudice, if any, that would result from allowing an
amendment.  An amended pleading asserting
a new defense is not prejudicial as a matter of law; the amendment must be
evaluated in the context of the entire case. 
Stephenson v. LeBoeuf, 16 S.W.3d 829,
839 (Tex. AppCHouston [14th Dist.] 2000, pet. denied).  To prevail, Deutsch must show the Law Firm=s
amended answer (1) reshaped the nature of the trial; (2) could not have been
anticipated; and (3) prejudiced his presentation of the case.  See id. 









In
each part of his pleading for affirmative relief, Deutsch made the same claims
against the Law Firm and Waddell.  The
Law Firm did not assert a limitations defense, but Waddell did.  Consequently, Deutsch had notice of the
issues likely to arise with respect to this defense.  For this reason, it would be difficult to
characterize the limitations defense as one that reasonably could not have been
anticipated.  Although Deutsch=s
counsel claimed both surprise and prejudice in general terms, he did not
indicate how the trial was unexpectedly changed when the Law Firm merely sought
to add a defense already raised by the individual attorney.  We find Deutsch could not have been surprised
or prejudiced by the trial amendment.  See
id.; Greenhalgh v. Service Lloyds Ins. Co.,
787 S.W.2d 938, 939 (Tex. 1990) (requiring party opposing amendment to present
evidence of surprise or prejudice). Accordingly, we hold the trial court did
not err in granting the trial amendment, and we overrule Deutsch=s
second issue.    

B.        Did the trial court err in granting the Law Firm=s
motion for directed verdict as to Deutsch=s breach-of-fiduciary-duty claim, including Deutsch=s
claim for fee forfeiture?

In
his first and seventh issues, Deutsch asserts the trial court erred in
directing a verdict against him as to his breach-of-fiduciary-duty claim,
including his claim for fee forfeiture.  On appeal, the Law Firm no longer
presses limitations, perhaps because there was conflicting evidence as to when
Deutsch discovered these claims or because of the common-law tolling rule for
clients= claims against their attorneys.  See Apex Towing Co. v. Tolin,
41 S.W.3d 118, 119 (Tex. 2001) (holding that, when an attorney commits legal
malpractice in the prosecution or defense of a claim that results in
litigation, the statute of limitations on 
a legal-malpractice claim against that attorney is tolled until the
terminal point of the underlying litigation); Szczepanik
v. First Southern Trust Co., 883
S.W.2d 648, 649 (Tex. 1994). 
However, in its motion for directed verdict, the Law Firm asserted other
grounds for directed verdict as to Deutsch=s breach-of-fiduciary-duty claim: (1) no evidence of breach of
fiduciary duty, (2) impermissible fracturing of a negligence claim, and (3) no
damages. 








In
reviewing the trial court=s granting of a directed verdict, we must determine whether
there is any evidence of probative force to raise a fact issue on the material
questions presented.  Szczepanik, 883 S.W.2d at 649.  We consider all of the evidence in the light
most favorable to the party against whom the verdict was directed and disregard
all contrary evidence and inferences; we give the losing party the benefit of
all reasonable inferences created by the evidence.  Id. 
If there is any conflicting evidence of probative value, a directed
verdict is improper and the case must be reversed and remanded for jury
determination of that issue.[3]
 Id.   

In
his petition, Deutsch alleged that the Law Firm breached its fiduciary duty by
taking the following actions for its own benefit:

(1)
misrepresenting the Law Firm=s
billing procedures; 

(2)
failing to counsel and advise Deutsch about the conflicts of interest which
arose during the Law Firm=s
representation of Deutsch in his Texas state court action and in the adversary
proceeding in Delaware; 

(3)
failing to withdraw from representation of Deutsch once the conflicts arose; 

(4)
failing to advise Deutsch to retain separate counsel, in light of the Law Firm=s
conflicts of interest in representing Deutsch; 

(5)
failing to counsel and advise Deutsch about the purpose and effect of the
indemnity language contained in his engagement letter with the Law Firm; 

(6)
failing to counsel and advise Deutsch about the ramifications of filing his
state court action in violation of the bankruptcy stay and injunction; 

(7)
failing to confer with Deutsch before misrepresenting to the bankruptcy court
that Deutsch had agreed to purchase the Kirkwood Atrium III building, with no
contingencies for financing; 

(8)
failing to counsel and advise Deutsch regarding the ramifications of making
representations on the record during the bankruptcy case; 

(9)
failing to counsel and advise Deutsch regarding the nature of the contested
matters in the adversary proceeding and Deutsch=s
potential liability for same;

(10)
failing to conduct any discovery in the adversary proceeding; 

(11)
failing to call witnesses at the trial of the adversary proceeding who could
have provided testimony in support of Deutsch; 








(12)
failing to file any counterclaims on behalf of Deutsch and/or TriState in the adversary proceeding; 

(13)
failing to represent Deutsch after receiving an assignment of a portion of
Deutsch=s ownership
interests for financing; 

(14)
failing to represent Deutsch in an appeal of the adversary proceeding; and

(15)
revealing matters to the opposing party in the adversary proceeding that were
adverse to Deutsch=s position.  

 

1.  Was there
legally sufficient evidence the Law Firm misrepresented its billing procedures
and revealed matters to the opposing party in the adversary proceeding that
were adverse to Deutsch=s position?

 

In items (1) and (15) above, Deutsch
alleged that the Law Firm misrepresented its billing procedures and revealed
matters to the opposing party in the adversary proceeding that were adverse to
Deutsch=s position.  We conclude that there was no legally
sufficient evidence at trial to support a breach-of-fiduciary-duty claim based
on these two allegations. 

There was evidence that Deutsch struck out provisions of the
Law Firm=s proposed engagement letter which
stated that the Law Firm would record its time in quarter-hour increments and
that it might bill in excess of the fees reflected by its hourly billing
rates.  David Waddell testified that he
told Deutsch these changes to the engagement letter were acceptable, that he
understood the Law Firm was only to bill for actual time worked, and that the
Law Firm billed only for actual time worked. 
Waddell also stated that he did not have a specific conversation with
Deutsch about the items that he struck out and that, prior to the filing of
Deutsch=s counterclaim against the Law Firm,
Deutsch never complained to Waddell about the Law Firm=s billing Deutsch in quarter-hour
increments.  Joseph Bax,
a partner at the Law Firm, testified that the Law Firm=s accounting system was incapable of
recording time in any units other than quarter-hour increments.  Bax also stated
that, if a client had insisted that the Law Firm not bill in quarter-hour
increments, then he would have referred the client to other counsel.  








Deutsch
has not cited, and we have not found, any evidence in the record or reasonable
inference therefrom that would support a finding that
the Law Firm misrepresented its billing procedures to Deutsch.  Even if Waddell agreed that the Law Firm
would bill for the precise amount of time worked, rather than in quarter-hour
increments, this would only go to the Law Firm=s agreement with Deutsch; it would
not be evidence that the Law Firm misrepresented its billing procedures to
Deutsch.  Likewise, Deutsch has not
cited, and we have not found, any evidence in the record or reasonable
inference therefrom that would support a finding that
the Law Firm revealed matters to the opposing party in the adversary proceeding
that were adverse to Deutsch=s position.  Considering all of the evidence in the light most favorable to
Deutsch, disregarding all contrary evidence and inferences, and giving Deutsch
the benefit of all reasonable inferences created by the evidence, we conclude
there was no conflicting evidence of probative value as to whether the Law Firm
misrepresented its billing procedures or revealed matters to the opposing party
in the adversary proceeding that were adverse to Deutsch=s
position.  See Szczepanik,
883 S.W.2d at 649.  Accordingly, the trial court
correctly directed a verdict in the Law Firm=s favor as to these allegations.   

2. 
Do Deutsch=s breach-of-fiduciary-duty
allegations impermissibly fracture his negligence claim? 








In its
motion for directed verdict, the Law Firm also asserted that Deutsch had improperly
fractured his negligence claim. 
Therefore, we must determine whether Deutsch=s remaining breach-of-fiduciary-duty
allegations impermissibly fracture his negligence claim.  This
is a difficult area of the law, and there are confusing statements in dicta in
some of the cases.  Nevertheless, when
cases say that clients cannot divide or fracture their negligence claims
against their attorneys into other claims, this does not mean that clients can
sue their attorneys only for negligence. 
See Burrow v. Arce, 997 S.W.2d 229, 237B47
(Tex. 1999) (holding that, although negligence claim fails if client suffers no
damages, clients still may obtain fee forfeiture as remedy under their breach-of-fiduciary-duty
claim, even in absence of damages); Latham v. Castillo, 972 S.W.2d 66,
69B70
(Tex. 1998) (holding that client can assert DTPA claim against attorney, apart
from negligence claim, where client alleged that attorney made affirmative
misrepresentation); Spera v. Fleming, Hovenkamp & Grayson, P.C., 25 S.W.3d 863, 872B73
(Tex. App.CHouston [14th Dist.] 2000, no pet.) (holding that fact issue precluded summary
judgment as to breach-of-fiduciary-duty claim, even though negligence claim
failed as a matter of law); Jampole v.
Matthews, 857 S.W.2d 57, 61B63 (Tex.
App.CHouston [1st Dist.] 1993, writ denied) (holding that, under certain circumstances,
clients may assert fraud and breach-of-contract claims against their attorneys,
separate from negligence claims);  Estate
of Degley v. Vega, 797 S.W.2d 299, 303B04
(Tex. App.CCorpus Christi 1990, no writ) (holding that clients may assert common-law
fraud claims against their attorneys separate from their negligence claims); but
see Cuyler v. Minns, 60
S.W.3d 209, 216 (Tex.
App.CHouston [14th Dist.] 2001, pet. denied) (indicating, in dicta, that all claims
asserted by clients against their attorneys should be considered negligence
claims); Sledge v. Alsup, 759 S.W.2d 1, 2B3
(Tex. App.CCorpus Christi 1988, no writ) (same as Cuyler).








The rule
against dividing or fracturing a negligence claim prevents legal-malpractice
plaintiffs from opportunistically transforming a claim that sounds only in
negligence into other claims.  See,
e.g., Goffney v. Rabson,
56 S.W.3d 186, 188B94 (Tex.
App.CHouston [14th Dist.] 2001, pet. denied). 
This analysis is analogous to determining whether claims are contract or
DTPA claims or whether they sound in contract or tort.  See Crawford v. Ace Sign, Inc., 917
S.W.2d 12, 13B15 (Tex. 1996); Southwestern Bell Telephone Co. v. DeLanney, 809 S.W.2d 493, 493B95
(Tex. 1991).  If the gist of a client=s
complaint is that the attorney did not exercise that degree of care, skill, or
diligence as attorneys of ordinary skill and knowledge commonly possess, then
that complaint should be pursued as a negligence claim, rather than some other
claim.  See, e.g., Goffney,
56 S.W.3d at 190B94.  If, however, the
client=s
complaint is more appropriately classified as another claim, for example,
fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client
can assert a claim other than negligence. 
See id. (indicating in dicta that claims for failure to disclose
conflicts of interest and other breaches of duties of candor and loyalty would
have stated a separate claim for breach of fiduciary duty but that this type of
conduct was not alleged by plaintiffs). 

After reviewing
items (5)B(14) of Deutsch=s breach-of-fiduciary-duty allegations[4],
we conclude that the gist of these allegations is that the Law Firm did not
exercise that degree of care, skill, or diligence as attorneys of ordinary
skill and knowledge commonly possess. 
Therefore, these allegations should be pursued only as a negligence
claim, and Deutsch impermissibly fractured his negligence claim by asserting
these complaints as breach-of-fiduciary-duty allegations. See id.  The trial court did not err in granting a
directed verdict as to items (5)B(14).  








In items (2)B(4),
Deutsch complained about the Law Firm=s failure to disclose and counsel Deutsch about conflicts of
interest, its failure to withdraw from representing Deutsch in light of these
conflicts, and its failure to advise Deutsch to retain separate counsel because
of these conflicts.  The gist of these
complaints regarding the Law Firm=s conflicts of interest was not that the Law Firm failed to
exercise that degree of care, skill, or diligence as attorneys of ordinary
skill and knowledge commonly possess; rather, these complaints are  appropriately classified as a breach-of-fiduciary-duty
claim, independent of Deutsch=s negligence claim.  See Holland v. Brown, 66 S.W.2d
1095, 1102 (Tex. Civ. App.CBeaumont
1933, writ ref=d) (stating that attorneys owe their clients utmost good faith
in their dealings with them, that attorneys owe their clients a duty to
affirmatively disclose all material facts that would affect their relationship
as well as legal consequences of those facts, and that breach of this duty
states a claim for constructive fraud);  Sherwood
v. South, 29 S.W.2d 805,  808B9
(Tex. Civ. App. 1930, writ ref=d)
(holding by Texas Supreme Court that there was question for jury on client=s
fraud claim when client alleged attorney breached his duty of loyalty by
obtaining confidential client information and using it for his own personal
interest and against client=s interest);  Goffney, 56 S.W.3d at 193B94
(stating in dicta that claims for, among other things, failure to disclose
conflicts of interest state separate claims for breach of fiduciary duty
against attorneys); Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15,
22B23
(Tex. App.CTyler
2000, pet. denied) (stating that attorneys have fiduciary duty of full
disclosure and holding that evidence of failure to disclose, misrepresentation,
conflict of interest, and self-dealing supported jury=s
finding that attorneys breached their fiduciary duty); Sullivan v. Bickel
& Brewer, 943 S.W.2d 477, 482B83 (Tex.
App.CDallas
1995, writ denied) (holding that client stated separate claim for fraud); Jampole, 857 S.W.2d at 61B63
(holding that client stated separate claim for fraud).  








The dissent refers to a Aword-processor-created blizzard@ and notes that, in his counterclaim,
Deutsch alleged that the same fifteen items constituted negligence and breach
of fiduciary duty.  See post, slip
op. at p.1B2 (concurring and dissenting
opinion).  One might infer from these
statements that Deutsch=s breach-of-fiduciary-duty allegations are nothing more than
a repackaged negligence claim.  Though
Deutsch alleged the same facts in his petition for both his negligence and
breach-of-fiduciary-duty claims, this pleading practice is not
determinative.  The procedural rules
allow a claimant to plead in the alternative.  See Tex.
R. Civ. P. 48; Field v. AIM Management Group, Inc., 845 S.W.2d
469, 472 (Tex. App.CHouston [14th Dist.] 1993, no writ).  When, as in this case, the evidence raises a
genuine issue of material fact regarding alleged wrongful conduct that sounds
in negligence as well as alleged wrongful conduct that sounds in breach of
fiduciary duty, the trial court should charge the jury on both claims,
regardless of any alternative pleading.  See,
e.g., Burrow, 997 S.W.2d at 232B33, 237B46 (finding that jury should decide
fact issues regarding breach of fiduciary duty and negligence, even though
court indicates that plaintiffs= petition complained of all actionable conduct as basis for
both claims).  Therefore, the trial court erred to the extent it granted a
directed verdict as to Deutsch=s allegations concerning conflicts of interest on the basis
that these allegations impermissibly fractured Deutsch=s
negligence claim.

3.  Did the trial court err in granting the Law
Firm=s motion
for directed verdict as to Deutsch=s
claim for damages allegedly caused by the Law Firm=s
breaches of fiduciary duty regarding the conflicts of interest? 

In part of his first issue, Deutsch asserts the trial court
erred in granting the Law Firm=s motion for directed verdict as to his claim for damages
allegedly caused by the Law Firm=s breaches of fiduciary duty
regarding the conflicts of interest.  In
this regard, Deutsch cites testimony from his expert witness, Keith Spickelmier.  While Spickelmier did make a conclusory
statement that Waddell=s alleged negligence in making unauthorized statements to the
bankruptcy court caused Deutsch damages, this statement was not related to the
Law Firm=s alleged breaches of fiduciary duty
regarding conflicts of interests.        








As to the
conflicts of interests, Spickelmier never testified
that they caused Deutsch any damages; rather, the only testimony he gave as to
damages in this regard indicates that these conflicts did not cause Deutsch any
damage: (1) Spickelmier acknowledged his own
statement that he had not reached a conclusion as to whether Deutsch had
suffered any specific amount of damages as a result of the conflicts of
interest; (2) he testified that Deutsch suffered no damage as a result of the
Law Firm=s representation of Dan-333; (3) he is not aware of
anything meaningful that happened during the time period when the Law Firm was
a party to the adversary proceeding and also representing Deutsch in the
adversary proceeding; (4) Spickelmier has not
quantified any amount of alleged damages that Deutsch has suffered as a result
of any alleged actionable conduct of the Law Firm; and (5) he has not formed an
opinion as to whether the conduct of the Law Firm caused Deutsch any damages as
to his interests in Dan-333 or in Kirkwood Atrium Associates.  Considering all
of the evidence in the light most favorable to Deutsch, disregarding all
contrary evidence and inferences, and giving Deutsch the benefit of all
reasonable inferences created by the evidence, we conclude there was no
conflicting evidence of probative value as to whether Deutsch suffered damages caused by the Law Firm=s alleged breaches of fiduciary duty regarding the
conflicts of interest.  See
Szczepanik, 883 S.W.2d at
649.  Accordingly,
we hold the trial court did not err in granting a directed verdict as to
Deutsch=s claim for damages regarding these alleged breaches
of fiduciary duty.

 

4.  Did the trial court err in granting the Law
Firm=s motion for directed verdict as to Deutsch=s
claim for fee forfeiture based on the Law Firm=s
alleged breaches of fiduciary duty regarding the conflicts of interest?

As a result of the above analysis, we
are left to consider whether the trial court correctly granted a directed
verdict as to Deutsch=s claim for fee forfeiture based on the Law Firm=s alleged breaches of fiduciary duty
regarding the conflicts of interest. For
fee forfeiture based on breach of fiduciary duty, the Texas Supreme Court has
established the following procedure:

Thus,
when forfeiture of an attorney=s
fee is claimed, a trial court must determine from the parties whether factual
disputes exist that must be decided by a jury before the court can determine
whether a clear and serious violation of duty has occurred, whether
forfeiture is appropriate, and if so, whether all or only part of an attorney=s
fee should be forfeited.  Such factual disputes
may include, without limitation, whether or when the misconduct complained of
occurred, the attorney=s mental state
at the time, and the existence or extent of any harm to the client.  If the relevant facts are undisputed, these
issues may, of course, be determined by the court as a matter of law.  Once any necessary factual disputes have
been resolved, the court must determine, based on the factors we have set
out, whether the attorney=s conduct was a
clear and serious breach of duty to his client and whether any of the attorney=s
compensation should be forfeited, and if so, what amount.

Burrow, 997
S.W.2d at 246 (emphasis added).  








Burrow controls our disposition of Deutsch=s
complaint that the trial court erred in directing a verdict on his
fee-forfeiture claim based
on the Law Firm=s alleged breaches of fiduciary duty regarding the conflicts
of interest.  As to this claim, the
no-damages argument fails because damages are not necessary to prevail on a
fee-forfeiture claim.  See Burrow,
997 S.W.2d at 237B40 (holding clients need not prove actual damages to obtain
fee forfeiture for their attorney=s breach of fiduciary duty).  As to the fracturing issue, we already have concluded that these allegations do not impermissibly
fracture Deutsch=s negligence claim. 
Therefore, we must determine whether there was legally sufficient
evidence of these breach-of-fiduciary-duty allegations, requiring the trial
court to charge the jury as to them. We conclude that genuine issues of
material fact exist as to whether the Law Firm breached its fiduciary duty, by
failing to fully disclose all material facts relating to conflict-of-interest
issues regarding the Law Firm=s simultaneous representation of both Deutsch and another firm
client, Dan-333, and whether the Law Firm should have withdrawn from its
representation of Deutsch because of a conflict of interest created by the Law
Firm=s
simultaneous representation of Dan-333 in a property-tax matter.  Because there were genuine issues of material
fact as to whether the Law Firm breached its fiduciary duty and as to the
mental state of the attorneys in question at the time of the alleged breaches,
under Burrow, the trial court should have charged the jury on these fact
issues, separately from any negligence submission.  See Burrow, 997 S.W.2d at 232B33,
237B46;
Spera, 25 S.W.3d at 872B74
(holding summary judgment was improper as to breach-of-fiduciary-duty claim
seeking fee forfeiture because there was fact issue regarding whether attorneys
breached their fiduciary duty to disclose material facts relating to conflicts
of interest, even though plaintiffs= negligence claims failed as a matter of law).  Texas law allows Deutsch to assert a separate
and independent claim for breach of fiduciary duty in this situation.  See 
Burrow, 997 S.W.2d at 232B33, 237B46; Spera, 25 S.W.3d at 872B74.









In Burrow,
the legal-malpractice plaintiffs asserted a number of claims, including
negligence and breach of fiduciary duty. See Burrow, 997 S.W.2d at 232B33.  All of the plaintiffs=
claims were based on the same set of facts and circumstances. See id.  Nonetheless, because there were genuine
issues of material fact regarding the clients= claims for fee forfeiture, and because summary judgment was improper
on the clients= negligence claims, the Texas Supreme Court held the trial
court=s
summary judgment should be reversed and the jury should resolve the fact issues
regarding the defendants= alleged negligence and also those fact issues relating to the
defendants= alleged breaches of fiduciary duty.  Id. at 232B34,
237B46.

The Texas
Supreme Court has prescribed the procedural steps for resolving this type of
claim.  Under Burrow, the jury
must determine the factual issues before the trial court can determine
whether the breach of fiduciary duty, if any, found by the jury was a clear and
serious breach that merits fee forfeiture, and, if so, the extent of the
forfeiture.  See Burrow, 997
S.W.2d at 246.  Because there were fact
issues regarding breach of fiduciary duty and scienter,
the jury C not the trial court C had to determine these fact issues.  Accordingly, we conclude the trial court
erred in granting a directed verdict as to Deutsch=s
claim for fee forfeiture based
on the Law Firm=s alleged breaches of fiduciary duty regarding the conflicts
of interest.  See Burrow, 997
S.W.2d at 237B46; Szczepanik, 883 S.W.2d at
649; Spera, 25 S.W.3d at 872B74.


5.  Can this court affirm the directed verdict as to fee forfeiture on the basis
that the trial court did not abuse its discretion in denying fee forfeiture ?

The dissent
does not dispute that there was a genuine issue of material fact as to whether
the Law Firm breached its fiduciary duty and, in fact, presumes the Law Firm
breached its fiduciary duty.  The dissent
contends that the trial court exercised its discretion to deny fee forfeiture
and that this court should not find error in the directed verdict absent an
abuse of discretion.  See post,
slip op. at p. 2B9.  To determine whether
there was an abuse of discretion, the dissent asserts that this court should
determine whether, Aviewing all the evidence in Deutsch=s
favor, no reasonable trial judge could have denied fee forfeiture.@  Post, slip op. at p.6B7.
We respectfully disagree with the dissent=s analysis of the conflicts because (1) the trial court never
exercised its discretion to deny fee forfeiture; (2) if the trial court had
done so, it would have been error; (3) this court cannot consider the dissent=s
discretionary ground because the Law Firm did not assert it in its motion for
directed verdict; and (4) in any event, there was sufficient evidence to allow
the trial court to consider, at the appropriate time, whether to award fee
forfeiture.  








                                       No
Discretionary Determination on Fee Forfeiture








First,
in its motion for a directed verdict, the Law Firm did not ask the trial court
to make a discretionary determination that, even if the Law Firm had breached
its fiduciary duty, Deutsch still was not entitled to fee forfeiture.[5]
 Furthermore, the trial court never
exercised any purported discretion to deny Deutsch=s
fee-forfeiture claim; rather, the trial court granted the Law Firm=s
motion for directed verdict as to Deutsch=s breach-of-fiduciary-duty claim, precluding the jury from
finding breach of fiduciary duty and precluding the trial court from deciding
whether to exercise its discretion to award fee forfeiture based on any jury
findings on this claim.  The dissent
incorrectly states that it is this court=s position that the trial court never ruled on the
fee-forfeiture claim.  That is not
so.  The trial court did rule on the
fee-forfeiture claim C it granted a directed verdict as to the entire
breach-of-fiduciary-duty claim.  That
interlocutory ruling merged into the trial court=s final judgment and is now before us on appeal.  See H.B. Zachry
Co. v. Thibodeaux, 364 S.W.2d 192, 193 (Tex.1963) (holding that  prior interlocutory orders merge into
subsequent order  disposing of all
remaining parties and issues, creating a final and appealable
judgment); Columbia Rio Grande Regional Hosp. v. Stover, 17 S.W.3d 387,
391 (Tex. App.CCorpus Christi 2000, no pet.); Exxon Corp. v. Garza, 981 S.W.2d 415,
420 (Tex. App.CSan Antonio 1998, pet. denied); see also Dickinson v. Auto Center Mfg.
Co., 733 F.2d 1092, 1101B02 (5th Cir. 1983) (holding that trial court=s
interlocutory ruling on motion for directed verdict merged into final judgment
and was reviewable on appeal from final
judgment).  If Deutsch=s
breach-of-fiduciary-duty claim failed as a matter of law, then the trial court
did just what it should have done procedurally C it granted a directed verdict, did not charge the jury on this
claim, and did not  have to address
whether it should exercise its discretion to award fee forfeiture under Burrow.  See Burrow, 997 S.W.2d at 246.

The issue
before this court is whether a directed verdict was proper.  Because there was conflicting evidence of
probative value on Deutsch=s claim for fee forfeiture based on breach of fiduciary, the
trial court=s directed verdict was improper in this regard, and this court
must reverse and remand for jury determination of the fact issues regarding
that claim.  See Szczepanik,
883 S.W.2d at 649. As to Deutsch=s fee-forfeiture claim, the dissent asserts that the trial
court=s
directed verdict should be affirmed despite these fact issues.  The dissent argues this court should affirm
the directed verdict based on a review of the trial court=s
purported discretionary determination not to award fee forfeiture in this
case.  








The
trial court, however, made no finding, express or implied, that fee forfeiture
is not an appropriate remedy in this case. 
The trial court granted the Law Firm=s motion for directed verdict as to Deutsch=s
breach-of-fiduciary-duty claim, and thus no factual issues were submitted to
the jury as to this claim.  Because
neither the trial court nor the jury made any factual determinations regarding
the breach-of-fiduciary-duty claim, there is no basis on which to imply a
finding by the trial court that fee forfeiture is inappropriate under Burrow.  See Tex.
R. Civ. P. 279 & 299; Burrow, 997 S.W.2d at 246; IKB
Indus. (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440,  441B43 (Tex. 1997); Burnett v. Motyka,
610 S.W.2d 735, 736 (Tex. 1980).  We are
aware of no authority allowing this court to affirm a directed verdict based on
a discretionary ruling the trial court never made.

                                             Any
Request Would Have Been Premature

Second, even if the Law Firm had moved for a directed verdict
on the ground that the trial court should exercise its discretion to deny fee
forfeiture despite the fact issues regarding breach of fiduciary duty, its
efforts would have been in vain.  The
Texas Supreme Court has made it clear that the trial court should not determine
the clear-and-serious-breach issue and whether to award fee forfeiture until after
the jury has resolved all material fact questions regarding whether the
defendant breached its fiduciary duty.  See
Burrow, 997 S.W.2d at 246 (Aa trial court must determine from the parties whether factual
disputes exist that must be decided by a jury before the court can determine
whether a clear and serious violation of duty has occurred, whether forfeiture
is appropriate, and if so, whether all or only part of an attorney=s
fee should be forfeited.@); Jackson Law Office, P.C., 37 S.W.3d at 23 (same).  We are not at liberty to encroach on
methodology the Texas Supreme Court has devised and adopted for fee-forfeiture
claims.  Though our dissenting colleague
would have us take an arguably more efficient path, as an intermediate court of
appeals, we must follow the Texas Supreme Court=s expressions of the law and leave changes in the application
of common-law rules to that higher authority.  See In the Interest of K.M.S., 45 Tex. Sup. Ct. J. 877, 2002 WL 1338100, at *1 (June 20, 2002); Lofton v. Texas Brine Corp., 777 S.W2d
384, 386 (Tex. 1989); Winograd v. Willis, 789
S.W.2d 307, 312 (Tex.
App.CHouston [14th Dist.] 1990, writ denied). 
Applying Burrow, as we must, it is clear that the trial court
erred by granting a directed verdict in favor of the Law Firm and not
submitting to the jury Deutsch=s claim for fee forfeiture based on the Law Firm=s alleged breaches of fiduciary duty
regarding any conflicts of interest.  See Burrow, 997 S.W.2d at 246. 








                                    Ground
Not Specified in Motion for Directed Verdict








Third, the rules of civil procedure require that A[a]
motion for directed verdict shall state the specific grounds therefor.@  Tex. R. Civ. P. 268.  Based on the wording of this rule, one might
reasonably conclude that this court may not affirm the directed verdict on a
ground not specified in the motion for directed verdict.  However, the Texas Supreme Court has held
that the failure to specify a ground in the motion for directed verdict is not
fatal if there are no fact issues raised by the evidence and the prevailing
party is entitled to judgment as a matter of law.  Texas Emp. Ins.
Ass=n v. Page, 553
S.W.2d 98, 102 (Tex. 1977) (stating the failure of a motion for directed
verdict to specify a ground Ais not always fatal, especially if there are no fact issues
raised by the evidence@); Harvey v. Elder, 191 S.W.2d 686, 687 (Tex. Civ.
App.CSan Antonio 1945, writ ref=d) (holding by the Texas Supreme
Court that trial court can grant sua sponte directed
verdict or nonspecific motion for directed verdict, as long as the prevailing
party below was entitled to judgment as a matter of law); Newman v. Link,
866 S.W.2d 721, 725B26 (Tex.
App.CHouston [14th Dist.] 1993) (stating the failure of a motion for directed verdict to
specify a ground Ais not fatal if there are no fact issues raised by the evidence@
and citing Page for this proposition)[6],
writ denied, 889 S.W.2d 288 (Tex. 1994) (per curiam);
see also In re Price=s Estate, 375
S.W.2d 900, 904 (Tex. 1964), superseded by statute as stated in Stiles v.
Res. Trust Corp., 867 S.W.2d 24, 28 (Tex. 1993).  The evidence raised fact issues regarding
Deutsch=s
claim for fee forfeiture based
on the Law Firm=s alleged breaches of fiduciary duty regarding the conflicts
of interest, and the dissent=s
conclusion that it would not be an abuse of discretion to deny fee forfeiture
is not an assertion that the Law Firm was entitled to judgment as a matter of
law.  Therefore, the Law Firm was
required to specify this ground in its motion for directed verdict.  Because the Law Firm did not move for
directed verdict on this ground, we cannot affirm on this basis.  See Tex.
R. Civ. P. 268; Texas Emp. Ins. Ass=n, 553 S.W.2d at 102; Newman, 866 S.W.2d at 725B26
.

                         Sufficient Evidence
of Clear-and-Serious Breach of Fiduciary Duty








Fourth,
it should be noted that there was sufficient evidence from which the trial
court could have concluded that the Law Firm committed a clear-and-serious
breach of fiduciary duty.  Under Burrow,
if the trial court had not granted a directed verdict, and if the proceedings
had progressed to that point, the trial court would have had discretion to find
the Law Firm=s breaches to be clear and serious based on the following
considerations: (1) the gravity and timing of the violation; (2) its wilfulness; (3) its effect on the value of the attorney=s
work; (4) any other threatened or actual harm to the client; (5) the adequacy of
other remedies; and (6) the public interest in maintaining the integrity of
attorney‑client relationships.  See
Burrow, 997 S.W.2d at 241B44.  The determination of
whether a clear-and-serious breach of fiduciary duty has occurred is a
discretionary call that does not require: (1) actual damages caused by the
breach; or (2) an intentional breach; or (3) inadequacy of other available
remedies.  See Burrow, 997 S.W.2d
at 241B44.  The dissent states that Deutsch suffered no
damages[7],
that the breaches were not intentional, and that A[t]he trial court could have found the conflicts were minor and
of short duration.@  See post, slip
op. at p. 5.  As a matter of law, damages
and an intentional breach are not required for a clear-and-serious breach to
exist.  See Burrow,997 S.W.2d at
241B44;
Jackson Law Office, P.C., 37 S.W.3d at 22B23 (affirming partial fee forfeiture under Burrow even
though the breaches of fiduciary duty did not cause damages and even though
there was no indication that the breaches were intentional).  








Attorneys owe
their clients a fiduciary duty of Amost abundant good faith,@ requiring absolute perfect candor, openness and honesty, and
the absence of any concealment or deception. 
See Goffney, 56 S.W.2d at 193.  The dissent presumes that the Law Firm
breached its fiduciary duty, for example, by failing to fully disclose to
Deutsch all material facts relating to conflict-of-interest issues regarding
the Law Firm=s simultaneous representation of Deutsch and Dan-333.  In its representation of Dan-333 in a
property-tax matter, the Law Firm was arguing for a low valuation of the
property in question, and, at the same time, the Law Firm was representing
Deutsch in the bankruptcy court and arguing for a high valuation of the same
property.  The conflict-of-interest
issues and the client=s need for full disclosure before consenting to continued
representation shows that there was sufficient evidence on the issue of whether
the Law Firm=s alleged breaches of fiduciary duty were clear and serious to
warrant consideration by the trial court if the jury were to find a breach of
fiduciary duty.  See Holland, 66
S.W.2d at 1102  (stating that attorneys
owe their clients utmost good faith in their dealings with them, that attorneys
owe their clients duty to affirmatively disclose all material facts which would
affect their relationship as well as legal consequences of those facts, and
that breach of this duty states a claim for constructive fraud); Jackson Law
Office, P.C., 37 S.W.3d at 22B23 (affirming partial fee forfeiture under Burrow based
in part on attorneys= breaches of fiduciary duty to fully disclose facts relating to
conflicts of interest, even though there were no damages and no apparent
intentional breaches); W. C. Turnbow Petroleum
Corp. v. Fulton, 199 S.W.2d 263, 264B65 (Tex. Civ. App.CTexarkana
1946, writ ref=d n.r.e.) (affirming fee forfeiture
against attorney and stating that A>An
attorney owes to his client an undivided allegiance . . . He cannot act both
for his client and one whose interest is adverse to or conflicting with that of
his client in the same general matter, however slight such adverse interest may
be, nor is it material that the intention and motive of the attorney may have
been honest.=@);  Bryant v. Lewis, 27 S.W.2d 604, 607B8
(Tex. Civ. App.CAustin 1930, writ dism=d)
(holding that attorney=s failure to disclose material facts regarding conflict of
interest and failure to disclose the legal consequences of those facts
justified forfeiture of attorney=s fee, even though attorney appeared not to have been aware of
conflict and to have acted in good faith); Condren
v. Grace, 783 F. Supp. 178, 185B87 (S.D. N.Y. 1992) (finding that attorney=s
fee should be forfeited because of breach of fiduciary duty by failure to
disclose material facts regarding conflicts of interest but also finding that
plaintiff had failed to prove attorney was negligent in representing
client).  

For these
reasons, we conclude the trial court erred when it granted a directed verdict
in favor of the Law Firm as to Deutsch=s claim for fee forfeiture based on the Law Firm=s alleged breaches of fiduciary duty
regarding the conflict-of-interest issues.        

6.  Summary








The trial court
correctly granted a directed verdict against Deutsch as to his claim for
damages based on breach of fiduciary duty because there was either legally
insufficient evidence that these breaches occurred (items (1) and (15)) or
these allegations impermissibly fractured his negligence claim (items (5)B(14))
or there was legally insufficient evidence of damages (items (2)B(4)).  The trial court erred in granting a directed verdict
against Deutsch as to his claim for fee forfeiture based on the alleged
breaches of fiduciary duty relating to the Law Firm=s
conflicts of interest because there were genuine issues of material fact as to
whether the Law Firm breached its fiduciary duty and as to the mental state of
the attorneys in question at the time of the alleged breaches.  See Burrow, 997 S.W.2d at 232B33,
237B46;
Spera, 25 S.W.3d at 872B74.  Accordingly, we overrule Deutsch=s first and seventh issues to the
extent Deutsch complains of the trial court=s directed verdict as to his claim
for damages based on breach of fiduciary duty and as to his claim for fee
forfeiture, except to the extent he sought fee forfeiture based on the alleged breaches of fiduciary duty relating to the
Law Firm=s
conflicts of interest.  We sustain
Deutsch=s
first and seventh issues as
to his claim for fee forfeiture based
on the alleged breaches of fiduciary duty relating to the Law Firm=s
conflicts of interest.  

D.        Did the
trial court err by refusing jury questions regarding certain alleged defenses?

 

The trial court
has considerable discretion to determine necessary and proper jury
instructions.  Texas Workers=
Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 911 (Tex. 2000).  When a trial court refuses to submit a
requested instruction, the question on appeal is whether the request was
reasonably necessary to enable the jury to render a proper verdict.  See Tex.
R. Civ. P. 277; Mandlbauer, 34 S.W.3d
at 911.  Further, for an instruction to
be proper, it must (1) assist the jury; (2) accurately state the law; and (3)
find support in the pleadings and the evidence. 
See Tex. R. Civ. P. 278;
Mandlbauer, 34 S.W.3d at 911.

In his
third, fourth, and fifth issues, Deutsch asserts that, even if the trial court
properly granted a directed verdict as to his breach-of-fiduciary-duty claim,
it erred by refusing to submit jury questions he requested regarding his
purported breach-of-contract defenses C misrepresentation, breach of
contract, and breach of fiduciary duty. 
Deutsch devoted less than one page to the  argument under these three issues.  Moreover, though he cited to a portion of the
clerk=s record showing that he filed
forty-two proposed jury questions three days before the charge conference, he
has not cited, and we have not found, any evidence in the record that the trial
court considered and refused any of these forty-two questions.  We find Deutsch did not preserve error based
on these questions.  See Corley v.
Exxon Pipeline Co., 821 S.W.2d 435, 437 (Tex. App.CHouston [14th Dist.] 1991, writ
denied). 








We note
that Deutsch has included in the appendix to his appellant=s brief thirty-two pages that appear
to be jury questions that were marked Arefused@ by the trial court; however, because
these documents are not part of the appellate record in this case, we may not
consider them.  See Carlton v. Trinity
Univ. Ins. Co., 32 S.W.3d 454, 458 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  Even if these documents had
been made part of the appellate record, we would not reach the merits of
Deutsch=s complaint because Deutsch has
waived these issues by failing to properly brief them.  See Tex.
R. App. P. 38.1(h); Houghton v. Port Terminal R. R. Ass=n, 999 S.W.2d 39, 51 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).  Though Deutsch states in a conclusory manner that the trial court erred by refusing
his questions regarding misrepresentation, breach of contract, and breach of
fiduciary duty, as defenses to the Law Firm=s contract claim, he does not cite or
otherwise specify any refused question or questions that he alleges properly
presented these purported defenses. 
Moreover, he cites only one case and then for an uncontroversial
proposition C that certain defenses that negate a
plaintiff=s claim may still be asserted even if
the statute of limitations bars the defendant from recovering on a claim under
the same theory.  Deutsch provides no
analysis as to why any proposed question was substantially correct and
supported by the evidence.  A party
asserting error on appeal bears the burden of showing that the record supports
the contention raised, and of specifying the place in the record where matters
upon which he relies or of which he complains are shown.  See Tex.
R. App. P. 38.1(h);  Houghton,
999 S.W.2d at 51.  Deutsch has failed to
carry this burden and thus has waived these issues.  See Tex.
R. App. P. 38.1(h); Houghton, 999 S.W.2d at 51.  Accordingly, we overrule Deutsch=s third, fourth, and fifth issues.

E.        Did the trial court err by granting a
directed verdict as to Deutsch=s
claims for exemplary damages, breach of contract, and attorney=s fees?

 

In four remaining issues, Deutsch complains of the
trial court=s directed verdict against various
other claims.  








In his
sixth issue, he complains the trial court granted a directed verdict as to his
claim for exemplary damages.  Deutsch did
not prevail on any theory at trial and recovered no damages.  Consequently, on appeal, there is no surviving
tort theory as to which Deutsch might recover actual damages.  Thus, Deutsch cannot recover exemplary
damages.  See Twin City Fire Ins. Co.
v. Davis, 904 S.W.2d 663, 665 (Tex. 1995) (parties cannot recover exemplary
damages unless they first recover under an independent tort claim).  We overrule Deutsch=s sixth issue.  

In his
eighth issue, Deutsch complains of the directed verdict against his
breach-of-contract claim.  Deutsch
pleaded the same fifteen items for breach of contract as for negligence.  In his eighth issue, the only contract claim
that Deutsch refers to is his claim regarding certain billing disputes with the
Law Firm.  The appellate record shows the
trial court submitted these disputes to the jury in question one of the
charge.  The jury deducted the amount of
a cash retainer the Law Firm had failed to apply in Deutsch=s favor; otherwise, the jury found in
the Law Firm=s favor as to the billing
dispute.  Deutsch has not asserted or
shown that the jury would have resolved these billing issues differently had
the trial court overruled the Law Firm=s directed verdict as to breach of
contract.  Therefore, any error in the
trial court=s directed verdict on the
breach-of-contract claim was harmless.  See
Cooper v. Lyon Fin. Servs., Inc., 65 S.W.3d 197,
209 (Tex. App.CHouston [14th Dist.] 2001, no pet.)
(holding any error in granting directed verdict as to one claim was harmless
because the jury considered and rejected the same damages that were sought
under another theory).  Accordingly, we
overrule Deutsch=s eighth issue.

In his
ninth and tenth issues, Deutsch complains of the directed verdict against his
own claim for attorney=s fees.  Deutsch sought
attorney=s fees under the DTPA and under
Chapter 38 of the Texas Civil Practice and Remedies Code.  See Tex.
Bus. & Com. Code ' 17.50(d); Tex. Civ.
Prac. & Rem. Code ' 38.001, et seq. 
The trial court did not charge the jury on the DTPA claim, and Deutsch
has not assigned any error in this regard on appeal.  Because Deutsch did not prevail on a DTPA
claim, he cannot recover attorney=s fees under the DTPA.  See Tex.
Bus. & Com. Code ' 17.50(d); Sears, Roebuck and Co. v. Nichols, 819
S.W.2d 900, 908 (Tex. App.CHouston [14th Dist.] 1991, writ denied).  To recover attorney=s fees under Chapter 38 of the Texas
Civil Practice and Remedies Code, a party must (1) prevail on a claim for which
attorney=s fees are recoverable, and (2)
recover damages.  Green International,
Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997).  Deutsch did
neither.  Accordingly, we overrule his
ninth and tenth issues.








                                               IV.  Conclusion

We sustain
Deutsch=s
first and seventh issues to the extent they pertain to his claim for fee
forfeiture based on alleged breaches of fiduciary duty relating to the Law Firm=s
conflicts of interest; otherwise, we overrule all of Deutsch=s
issues.  While the only claim left to be
resolved in this case is Deutsch=s claim for fee forfeiture based on alleged breaches of
fiduciary duty relating to the Law Firm=s conflicts of interest, the resolution of this claim may
affect the trial court=s judgment that the Law Firm recover its  attorney=s fees from Deutsch. 
Therefore, we reverse the trial court=s judgment and remand this case to the trial court for a jury
trial on the disputed fact issues regarding this claim and for further
proceedings consistent with this opinion.

 

 

 

/s/        Kem Thompson Frost

Justice

 

 

Judgment
rendered and Majority and Concurring and Dissenting Opinions filed
November 27, 2002.

Panel
consists of Chief Justice Brister and Justices
Anderson and Frost (Brister, C.J., concurring and
dissenting).

Publish
B Tex. R. App. P. 47.3(b).








Reversed and Remanded and Majority and Concurring and
Dissenting Opinions filed November 27, 2002.

 

 

 

 

 

In The

Fourteenth Court of Appeals

____________

 

NO. 14-00-01459-CV

____________

 

GEORGE DEUTSCH, Appellant

V.

HOOVER, BAX & SLOVACEK, L.L.P., Appellee

 



On
Appeal from the 165th District Court

Harris
County, Texas

Trial
Court Cause No. 97-43511



 

CONCURRING
AND DISSENTING OPINION








The law
firm of Hoover, Bax & Slovacek,
L.L.P. sued its former client, George Deutsch, for more than $60,000 in unpaid
fees.  Naturally, he responded with a
counterclaim; indeed, it was a word-processor-created blizzard that included
lists of fifteen identical acts, omissions, and conflicts of interest, each of
which was alleged to constitute negligence and breach of contract and
breach of fiduciary duty and negligent misrepresentation and (with
slightly shorter but still identical lists) DTPA and fraud.  Mercifully for the jury, the seasoned trial
judge condensed these duplicative claims into two broad-form questions, one
addressing negligence and the other breach of contract.  The jury found against Deutsch on both; he
challenges neither finding on appeal.  

Nevertheless,
the Court holds Deutsch is entitled to a second jury trial because, no matter
how flimsy his fee forfeiture claim, it must be submitted to a jury if there is
the least factual dispute.  Given the
highly discretionary nature of such claims, I do not believe the law requires
this futile exercise.  Thus, I
respectfully dissent to parts III(B)(4)-(6) of the Court=s opinion, although I fully join in
the remainder. 

                                                        The
Standard of Review?

Without any
discussion, the Court
applies the traditional standards for reviewing motions for directed verdict in
jury trials.  But fee forfeiture is not a
traditional jury claim; it is Ainherently equitable,@ and thus largely in the discretion
of the court.  See Burrow v. Arce, 997 S.W.2d 229, 246 (Tex. 1999).  While the jury is to decide factual disputes,
the decision whether there was a clear and serious breach of duty, and whether
any fees should be forfeited, is left up to the discretion of the trial
court.  Id.  The Court does not explain why the standard
for reviewing a directed verdict of a jury claim (in which trial judges have no
discretion) should apply to a fee forfeiture claim (in which they have quite a
lot). 








The
supreme court has not spelled out the standard of review we should employ in
fee forfeiture cases.[1]  But it has discussed in some detail the
standard of review that applies to declaratory judgment fee actions, which
involve a similar combination of jury questions (a reasonable and necessary
fee) and equitable considerations (a just and equitable fee).  There, the court prescribed a multi-faceted
review: Athe court of appeals must determine
whether the trial court abused its discretion by awarding fees when there was
insufficient evidence that the fees were reasonable and necessary, or when the
award was inequitable or unjust.@ 
Bocquet v. Herring, 972 S.W.2d
19, 21 (Tex. 1998).  Thus, while the
amount awarded by the jury is reviewed for sufficiency of the evidence, the
decision to grant or deny any fees at all is reviewed for an abuse of
discretion.  See Hunt v. Baldwin,
68 S.W.3d 117, 135 n.8 (Tex.  App.CHouston [14th Dist.] 2001, no
pet.).  As a result, it is often
irrelevant whether there was some evidence to support a jury=s award; equitable considerations may
require a reduced fee or no fee at all.[2]

Because
the issues are so similar, we should follow a similar standard of review
here.  As the trial court did not submit
to the jury factual questions regarding the alleged conflicts of interest, we
should apply the traditional standards and resolve all conflicts in the
evidence in Deutsch=s favor.  See Szczepanik v. First S. Trust Co., 883 S.W.2d
648, 649 (Tex. 1994).  But assuming those
to be the facts, we then should review the trial court=s judgment denying forfeiture for an
abuse of discretion, setting the judgment aside only if it is clear from the
record that the trial court had only one reasonable option.  See In re Nitla
S.A. de C.V., 45 Tex. Sup. Ct. J. 571, 2002 WL 534089 (April 11, 2002); Jackson
Law Office, P.C. v. Chappell, 37 S.W.3d 15, 29 (Tex. App.CTexarkana 2000, pet. denied) (holding
appellate court may find fee forfeiture order an abuse of discretion only if
facts and circumstances extinguished any discretion in the matter).   








The
Court reads Burrow to require a jury trial every time fee forfeiture is
alleged and there is any factual dispute, no matter how slight.  But the Burrow court said jury
submission is required only if there are factual disputes that Amust be decided by a jury before the court
can determine whether . . . forfeiture is appropriate.@ 
Id. (emphasis added). 
Surely it is possible a trial judge may decide, after hearing the
claimant=s case, that fee forfeiture is not
appropriate even if a jury found all factual disputes in the claimant=s favor. 
We do the same in any number of other proceedings in which trial judges
have a decision-making role.[3]  

Thus,
the trial judge=s failure to submit fact issues to the jury should not be per
se reversible error.  The proper question
for us is whether, viewing the evidence in the light most favorable to Deutsch,
denial of fee forfeiture was an abuse of discretion.

                                                         An
Abuse of Discretion?

Deutsch
bases his fee forfeiture claim on three conflicts of interest.[4]  Viewing the evidence in the light most
favorable to him,[5]
those conflicts were: 

The
adversary proceeding.  The bankruptcy trustee=s adversary proceeding was originally filed against
both Deutsch and the law firm, claiming both violated the automatic bankruptcy
stay.  The trustee voluntarily dropped
the claim against the firm nine days later, before it filed an answer.  During those nine days, Deutsch alleges
Waddell represented both his own firm and Deutsch, thus creating a conflict of
interest.  Deutsch=s expert admitted that nothing of consequence occurred
in the litigation during those nine days.








The Dan
333 tax matter.  Waddell admitted the conflicts check he ran
within the law firm failed to include Dan 333, one of the partnerships in which
Deutsch and the bankrupt parties were partners. 
A proper conflicts check would have disclosed that another member of the
law firm was representing Dan 333 in an attempt to lower its property
taxes.  The bankruptcy trustee filed a
motion to disqualify the law firm on this basis, at which time Waddell told
Deutsch about the potential conflict, and Deutsch consented to continued
representation by the firm.  See Tex. Disciplinary R. Prof=l Conduct 1.06, reprinted in Tex. Gov=t Code, tit. 2,
subtit. G app. A (Vernon Supp. 1998) (Tex. State Bar R. art. X, '9).  The motion
to disqualify was denied within fourteen days of filing.  Deutsch=s expert
could identify no damage from the conflict, or any effect upon Waddell=s representation.

The
March 8, 1994 hearing.  At a hearing in the bankruptcy court, Waddell
stated that Deutsch would buy a Houston building owned by one of the other
partnerships (not Dan 333) on terms that Deutsch alleges he had not approved.  When the sale failed because of these
discrepancies, the building was sold to someone else at a lower price, and the
trustee sought the difference from Deutsch. 
Deutsch claims Waddell was a material witness, and should have withdrawn
from representation as a result.  See Tex. Disciplinary R. Prof=l. Conduct 3.08(a) (requiring withdrawal if lawyer may be a
witness necessary to establish an essential fact on behalf of client).  When the issue was tried in Delaware, Waddell
did not testify, and Deutsch was not held liable for the difference. 

 

Deutsch
first argues that every conflict of interest is serious and ought to justify
fee forfeiture.  But fee forfeiture is
not automatic.  See Burrow, 997
S.W.2d at 240B41. 
Trial courts must use discretion and consider a number of factors before
deciding whether to forfeit any fees. 
Because we cannot substitute our judgment for the trial court=s, we consider only whether the trial
court reasonably could have found those factors weigh against forfeiture in
this case:[6]

$                  
Gravity and
timing of the violation.  The trial court could have found the alleged
conflicts were minor and of short duration. 
Indeed, the denial of the motion to disqualify, dismissal of the
adversary proceedings against the firm, and final judgment in Deutsch=s favor could have suggested that each was the result
of overreaching by opposing counsel rather than under-representation by Deutsch=s own.








$                  
Wilfulness.  During the trial, Deutsch admitted he did not
believe the firm ever intended to do him any harm.

$                  
Effect on
value of the lawyer=s work.  Deutsch=s expert
admitted none of the conflicts appeared to have any adverse effect on the firm=s representation.

$                  
Threatened or
actual harm to the client.  Deutsch presented no evidence that he
suffered any harm from the conflicts, and the jury found no negligence by the
firm caused him any harm.

$                  
Adequacy of
other remedies.  Because the legal fees in Burrow had
already been paid, the clients needed an equitable remedy to get them
back.  See Burrow, 997 S.W.2d at
232.  Here, by contrast, Deutsch had not
paid; he repeatedly urged the jury to lower his fees because of the
conflicts.  The trial court could have
found this remedy adequate, even though ultimately unsuccessful.

$                  
Public
interest in maintaining the integrity of attorney‑client
relationships.  Professional standards recognize that conflicts of
interest are sometimes harmless or unavoidable. 
See Tex. Disciplinary R.
Prof=l Conduct 1.06(b)B(d)
& 3.08(a)B(b) (providing exceptions in which conflicts of
interest are permissible).  The trial
court could have found that fee forfeiture was not needed to discourage
inadvertent errors in running a conflicts check or an opponent=s disqualification motion that proves to be baseless.

 

Deutsch
makes no argument that any of these conflicts were clear and serious other than
the Dan 333 tax matter.  It is true one
member of the law firm was arguing for a low valuation of Dan 333=s property in the tax proceeding
while Waddell argued for a high valuation in the bankruptcy proceeding.  But the trial court could have found this was
in everyone=s interest, as both Deutsch and Dan
333 stood to benefit from lower taxes and a higher sales price.  Surely a trial court could find fee
forfeiture is not required in every case when an attorney is hired to keep
taxes low but valuations for other purposes high. 








It is
not our role to condone or censure the law firm=s work in this case; as an appellate
court, our job is not to decide the facts or whether fee forfeiture was
appropriate.  Our only role is to decide
whether, viewing all the evidence in Deutsch=s favor, no reasonable trial judge
could have denied fee forfeiture. 
Because that is not the case, I would hold the trial court did not abuse
its discretion.

                                                           No
Proper Objection?

The
Court never disagrees with this analysis of the alleged conflicts; instead, it
holds that the law firm never moved for directed verdict on this ground.  But the record shows the contrary.  At the close of all evidence and immediately
before closing arguments, the law firm moved for directed verdict in an oral
motion that (due to the plethora of Deutsch=s claims and the thoroughness of the
law firm=s counsel) extends over more than
forty pages.  In the middle of that
motion, the firm=s counsel stated:

Now, with
regard to his fee forfeiture claim under the Arce
case, admittedly he does not have to prove damages.  What he has to prove is to get a jury finding
as to breach of fiduciary duty and then it becomes a court determination. The Arce case sets forth certain criteria that
the trial court judge and the trial court judge only can determine
whether the trial fees should be forfeited in their entirety, in part, or
not at all.

 

(emphasis added).  Some time later, the trial court granted the
motion as to all claims except negligence and breach of contract.

The
Court says this does not count as a motion for directed verdict because the law
firm=s attorney Arequests no relief from the trial
court,@ and merely Astates his view of the law in this
case.@ 
Ante at ___. 
Realistically, trial lawyers do not state abstract views of the law in
the middle of a motion, with the charge prepared, and a jury waiting out in the
hall for closing arguments.  Read in its
contextBin the middle of a motion for
directed verdictBthe last sentence asks the trial judge not to submit anything
to the jury regarding fee forfeiture, but to deny it based on the Burrow criteria
alone.








Having
said that, I do not think we can reverse even if the law firm=s motion was not specific
enough.  In equitable matters committed
to a trial court=s discretion, the rule is that we must affirm if there is any
basis in the record for doing so, whether or not the ground was expressly urged
by the successful party. See, e.g.,
Newman v. Link, 866 S.W.2d
721, 725B26
(Tex. App.CHouston [14th Dist.] 1993), writ denied, 889 S.W.2d 288 (Tex. 1994) (per curiam) (affirming directed verdict imposing constructive
trust even though movant stated no liability grounds
as a basis).[7]

The
Court reaches an opposite conclusion by way of two errors.  First, the Court overstates the law governing
motions for directed verdict generally. 
It is not true that a motion for directed verdict can only be
affirmed on grounds stated in the motion:

Although
Rule 268, Texas Rules of Civil Procedure, provides that a motion for instructed
verdict shall state the specific grounds therefor, failure
to so state is not always fatal, especially if there are no fact
issues raised by the evidence.

Texas Employers Ins. Ass=n v. Page,
553 S.W.2d 98, 102 (Tex. 1977) (emphasis added).  The word Aespecially@ indicates that the absence of fact issues is a special
case in which grounds do not have to be stated, but by no means the only
case.  Indeed, a trial court may
direct a verdict sua sponteBwithout a motion mentioning any grounds at all.[8]

Second,
the Court again overlooks the equitable nature of fee forfeiture
proceedings.  If a matter is committed to
the trial court=s discretion, it cannot be limited to the timing or reasons
selected by either of the parties.








A directed
verdict is not like a summary judgment; it comes only after the plaintiff=s evidence is closed.  Plaintiffs present their evidence as they
wish; no one must give them notice of what they must prove.  When they rest, omissions cannot be cured by
further evidenceBit is too late for that. 
If the case is lost, jurors do not have to sit through the rest of a
trial simply because the defendant hasn=t noticed yet.  I would hold we cannot avoid applying the
proper standard of review simply because the law firm did not state it
precisely enough.

                                                                    No
Ruling?

Finally,
the Court says the trial judge never exercised his discretion to deny Deutsch=s fee forfeiture claim.  It is true that neither his oral directed
verdict nor the written final judgment explicitly mentioned the fee forfeiture
claim.  But there is a presumption that
applies here: when a trial judge signs a judgment after a conventional trial on
the merits, we must presume that he Aintended to, and did, dispose of . .
. all issues made by the pleadings between the parties.@  North East Indep.
School Dist. v. Aldridge, 400 S.W.2d 893, 897-88 (Tex. 1966).  Without question, the trial judge could have
initially ruled one way on the directed verdict, and then later reconsidered
and ruled differently.  See Conrey v. McGehee, 473 S.W.2d
617, 620 (Tex.  App.CHouston [14th Dist.] 1971, writ ref=d n.r.e.)
(affirming directed verdict that was granted only after jury could not reach a
verdict).

The
Court holds the trial judge never exercised any discretion regarding fee
forfeiture because he said he was granting a directed verdict on all
fiduciary claims based on limitations. 
Of course, applying that reasoning, we would have to say the trial judge
never granted a directed verdict based on the Afracturing@ and Ano damages@ grounds either.  The majority and I disagree whether the law
firm=s motion was necessary or sufficient;
we should not be disagreeing on whether the trial judge=s oral pronouncement is somehow
binding in this appeal.

                                                                    Conclusion








I agree
with the Court that Deutsch is not entitled to avoid his legal bill by any
remedy at law; my only disagreement is whether equity requires something
more.  Attorneys must exercise Athe punctilio of an honor@ toward clients.  See Lopez, 22 S.W.3d at 866  (Gonzalez, J., concurring and dissenting)
(quoting Justice Cardozo in Meinhard
v. Salmon, 164 N.E. 545, 546 (N.Y. 1928)). 
But even attorneys who do will sometimes have dissatisfied clients,
lawsuits and legal fees being what they are. 
Adding a fee forfeiture claim to every legal malpractice or fee
collection suit is the work of a moment. 
If the Court is correct that Burrow requires a jury trial over
every scintilla of a punctilio, Texas judges and jurors will soon be occupied
with little else.  

 

 

/s/        Scott Brister

Chief
Justice

 

Judgment rendered and Majority and Concurring and
Dissenting Opinions filed November 27, 2002.

Panel consists of Chief Justice Brister
and Justices Anderson and Frost.  (Frost,
J. majority.)

Publish C Tex. R. App. P. 47.3(b).

 

 

 

 











[1]  There
is a potential nomenclature problem in the cases caused by the fact that a Alegal
malpractice claim@ might be
thought of by some as any claim brought by a client against that client=s
attorney.  However, when cases refer to Alegal
malpractice@ or Aa
legal malpractice claim,@ often they are
referring to a negligence claim in which the issue is whether the attorney
exercised that degree of care, skill, and diligence as attorneys of ordinary
skill and knowledge commonly possess and exercise.  See Goffney v. Rabson, 56 S.W.3d 186, 190 (Tex. App.CHouston
[14th Dist.] 2001, pet. denied).  To avoid confusion, in this opinion a claim
that the attorney did not exercise that degree of care, skill, and diligence as
attorneys of ordinary skill and knowledge commonly possess and exercise is
referred to as a Anegligence
claim@ rather than as
a Alegal
malpractice claim.@  Further, we use the term Alegal
malpractice@ to refer to
any claim brought by a client against that client=s
attorney, regardless of whether the claim asserts negligence, fraud, breach of
fiduciary duty, breach of contract, or any other allegation.

 





[2]  On appeal,
neither party asserts that our review of the trial court=s directed verdict is limited to only the
statute-of-limitations ground, and we consider all grounds raised by the Law
Firm in its motion for directed verdict. 





[3]  This is the
controlling standard of review.  The
dissent creates a hybrid, discretionary standard of review to determine whether
the trial court erred in granting directed verdict C AOur only role is to decide whether, viewing all the
evidence in Deutsch=s favor, no reasonable trial judge could have denied
fee forfeiture.@ See post, slip op. at p.6B7 (concurring and dissenting opinion).  The dissent=s
standard of review is incorrect and not supported by precedent.   See Burrow v. Arce,
997 S.W.2d 229, 237B46 (Tex. 1999); Szczepanik
v. First Southern Trust Co., 883 S.W.2d 648, 649 (Tex. 1994); see also
R. R. Street & Co., Inc. v. Pilgrim Enterprises, Inc., 81 S.W.3d 276,
303B05 (Tex. App.CHouston
[1st Dist.]  2001, pet. filed) (using
traditional directed-verdict standard of review to conclude directed verdict
should be reversed and stating that the court=s
analysis is the same analysis that would be used in fee-forfeiture case under Burrow).





[4]  See
list of fifteen breach-of-fiduciary-duty allegations on pages 7B8.





[5]  The
dissent, however, concludes that the Law Firm did ask the trial court to
countermand the Burrow holding and to grant a directed verdict as to fee
forfeiture based on a discretionary determination that, even if the Law Firm
had breached its fiduciary duty, Deutsch still was not entitled to fee
forfeiture under Burrow.  See
Burrow, 997 S.W.2d at 240B46.  The dissent gleans this request for relief
from the following statement by the Law Firm=s
counsel during his motion for directed verdict (emphasis added):

 

Now, with regard to his fee forfeiture claim under the
Arsee [sic] [Burrow] case admittedly he does
not have to prove damages.  What he has
to prove is to get a jury finding as to breach of fiduciary duty and then it
becomes a court determination. The Arsee [sic]
case sets forth certain criteria that the trial court judge and the trial court
judge only can determine whether [sic] the trial fees should be forfeited in
their entirety, in part or not at all.

 

In this part of
the Law Firm=s motion for
directed verdict, counsel requests no relief from the trial court; rather,
counsel states his view of the law in this case C
that Deutsch must obtain a jury finding that the Law Firm breached its
fiduciary duty before the matter becomes a trial-court determination and that
the trial court, at that point, would determine whether any or all of the fee
should be forfeited under the criteria set forth in Burrow.  See Burrow, 997 S.W.2d at 240B46.  The record shows that the Law Firm=s
counsel sought no relief and correctly summarized the Burrow case, which
requires the trial court to charge the jury if there are fact issues regarding
whether the Law Firm breached its fiduciary duty.  See id. 

 





[6]  The dissent
incorrectly states that Newman stands for the proposition that Ain equitable matters committed to a trial court=s discretion, the rule is that we must affirm if there
is any basis in the record for doing so, whether or not the ground was
expressly urged by the successful party.@  See post,
slip op. at p. 7B8. Newman does not support this proposition;
rather Newman held that  A[a]lthough Rule 268 requires
a motion for instructed verdict to state specific grounds, the failure to so
state is not fatal if there are no fact issues raised by the evidence.@  Newman,
866 S.W.2d at 725B26.  Although Newman
did involve a constructive trust, the court did not state that the equitable
nature of this remedy had anything to do with its holding in this regard.  See Newman, 866 S.W.2d at 725B26. 





[7]  The dissent=s statement that Athe jury
found no negligence by the firm caused [Deutsch] any harm@ is correct; however, it could be misunderstood.  See post,
slip op. at p. 6. The jury failed to find
that Athe negligence, if any, of [the Law Firm] proximately
cause[d] any injury to George Deutsch.@  The jury did not find that the Law Firm was
free from negligence, and the jury=s
finding in this regard may very well have been based on Deutsch=s failure  to
prove damages.  Deutsch was unable to
submit proper jury questions based on his fee-forfeiture claim because the
trial court granted the Law Firm=s motion
for directed verdict on this claim.





[1]  The
court has stated only that a decision Awhether
to forfeit any or all of an attorney's fee is subject to review on appeal as
any other legal issue.@ Burrow, 997
S.W.2d at 246.  The opinion does not
indicate which legal issues the court had in mind.





[2]  See Utley
v. Marathon Oil Co., 31 S.W.3d 274, 253 (Tex. App.CWaco 2000, no pet.) (holding that even though some
evidence supported jury=s fee award, trial court did not abuse its discretion
in reducing jury=s award by 80%); Stephenson v. LeBoeuf,
16 S.W.3d 829, 843 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (holding that
even though some evidence supported jury=s fee
award, trial court abused its discretion in granting any fee award at all).

 





[3]  See, e.g., Qantel Bus. Sys., Inc. v. Custom Controls Co., 761
S.W.2d 302, 304B05 (Tex. 1988) (holding trial judge in bench trial
need not deny directed verdict and go through full trial merely because some
evidence supports plaintiff=s claim, if trial judge does not credit that
evidence); Loomis Int=l, Inc. v. Rathburn, 698 S.W.2d 465, 469 (Tex. App.CCorpus Christi 1985, no writ) (same, with respect to
temporary injunction hearing); see also Kline v. O=Quinn, 874
S.W.2d 776, 785B86 (Tex. App.CHouston
[14th Dist.] 1994, writ denied) (affirming directed verdict because, as
defendants owed no duty to plaintiff, the parties= factual
disputes were immaterial).





[4]  Deutsch
alleges a fourth conflictCthat the law firm represented the bankruptcy trustee
during the adversary proceedingCbut he points to no evidence to support that
claim.  The testimony and exhibits show
that a Delaware firm represented the trustee in that proceeding.  It appears from the record that what Deutsch
actually is arguing is that, because the appellee law
firm represented Dan 333 in the ad valorem tax
matter, and because the bankruptcy trustee controlled the bankrupt partners= rights in Dan 333, then the firm was representing the
trustee.  This is nothing more than a
reiteration of the conflict relating to Dan 333.





[5]  Because fee
forfeiture presents a mix of factual and legal issues, it is unclear whether we
should limit our consideration to the evidence in his favor and discard all
contrary evidence, or consider all of the evidence in his favor only as much as
the record allows.  See S.V. v. R.V.,
933 S.W.2d 1, 8 (Tex. 1996).  But in this
case, the result is the same under either standard.





[6]  Burrow,
997 S.W.2d at 243B44.





[7]  See also In
re Gamble, 71 S.W.3d 313, 325 (Tex. 2002) (Baker, J., concurring) (arguing
that court based its analysis in mandamus on ground petitioner did not allege
in lower courts).  Texas criminal and
civil law appear to agree in this respect. 
See Hailey v. State, 2002 WL 31116654, *3 (Tex. Crim. App. 2002) (holding appellate courts may affirm but
cannot reverse trial court=s decision on legal theory not presented below).





[8]  See Guerra
v. Datapoint Corp., 956 S.W.2d 653, 657 (Tex.
App.CSan Antonio 1997, no writ); Valero Eastex Pipeline Co. v. Jarvis, 926 S.W.2d 789, 792
(Tex. App.CTyler 1996, writ denied); see also Gonzales v.
Willis, 995 S.W.2d 729, 740 (Tex. App.CSan
Antonio 1999, no pet.) (stating directed verdict must be affirmed on ground
disclosed by record even though not embodied in motion).